[Cite as *Neu v. Estate of Nussbaum*, 2015-Ohio-159.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| BARBARA NEU, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2014-05-117 |
| | : | O P I N I O N |
| - vs - | | 1/20/2015 |
| | : | |
| THE ESTATE OF DAVID NUSSBAUM, | : | |
| Defendant-Appellee. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-02-0487


Whitaker Attorneys, LLC, James A. Whitaker, Jr., Kristine L. Tammaro, 226 Reading Road, Mason, Ohio 45040, for plaintiff-appellant

Christopher R. Carville, 3960 Red Bank Road, Suite 120, Cincinnati, Ohio 45227, for defendant-appellee


**HENDRICKSON, P.J.**

{¶ 1} Plaintiff-appellant, Barbara Neu, appeals from the decision of the Butler County Common Pleas Court granting summary judgment in favor of defendant-appellee, The Estate of David Nussbaum, on appellant's negligence complaint against appellee. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} On January 6, 2012, at approximately 5:30 p.m., Nussbaum was driving

eastbound on West Chester Road, returning home from the grocery. The posted speed limit for that road is 35 m.p.h., and Nussbaum was travelling 25-30 m.p.h. Appellant was walking eastbound along the berm of West Chester Road, with her back to the traffic. Nussbaum noticed appellant when she was approximately a car-length ahead of him. Suddenly, without checking for traffic, appellant stepped out into the roadway into Nussbaum's lane of travel. Nussbaum braked and swerved in an effort to avoid hitting appellant but was unable to do so. Nussbaum struck appellant with his vehicle's passenger side front fender. Appellant was taken to the emergency room where it was determined that she sustained lacerations to her left elbow, knee and calf, as well as a fractured or dislocated ankle. The location on West Chester Road where the accident occurred was not at an intersection nor was it within the boundary of a marked crosswalk.

{¶ 3} There is no indication in the record that Nussbaum was ever charged with any criminal offense or traffic violation as a result of the accident. However, appellant was charged with two traffic violations as a result of the accident, though the exact nature of the violations with which she was charged is unclear from the record. Appellant represents that one of the two traffic violations brought against her was for being an "intoxicated pedestrian" and that she was acquitted of that charge.

{¶ 4} At appellant's hearing on the two traffic violations that were brought against her, the state called as a witness, Holly Vannelle, who was driving behind Nussbaum's vehicle at the time of the accident. Vannelle testified that she saw appellant "basically just walked straight in front of [Nussbaum's] car." Vannellee also testified that "no one was speeding" at the time of the accident. Appellant called as a witness, Nancy Robinson. Robinson testified that she was sitting in her automobile on Revere Run at the stop sign at or near the intersection of West Chester and Revere Run, waiting to turn left onto West Chester. Robinson testified that the accident occurred about the length of two residential yards from

where she was sitting. Robinson testified that she was surprised that Nussbaum did not slow down upon seeing appellant, and that she would have slowed down and even come to a halt if she had been in Nussbaum's place. However, Robinson also testified that Nussbaum was not speeding at the time of the accident; that appellant "turned into," and "walked in front of," Nussbaum's vehicle; and that Nussbaum did not have time to stop to avoid hitting appellant.

{¶ 5} There was conflicting evidence presented at the contested traffic hearing on whether appellant was intoxicated at the time of the accident. Robinson testified that just before the collision occurred, she saw appellant walking in the road and noticed that appellant was not looking for traffic, which struck Robinson as strange, as she lives in the area, knows West Chester Road well, and knows that it is a very dangerous road. Both Vannelle and Robinson testified at the contested traffic hearing that appellant had an odor of alcoholic beverage on her breath at the time of the accident, but Robinson, who is a registered nurse, testified that appellant "was not slurring her words or anything like that[;] she was able to speak coherently." The emergency room report on appellant listed "alcohol intoxication" as one of appellant's conditions, but the report also stated that appellant was "alert" and was responding to questions "appropriately." Appellant acknowledged in her answers to appellee's interrogatories that the night before the accident occurred, she drank an "unknown quantity of wine" until 3:00 a.m.; slept until 4:00 p.m. and then "[g]ot up, dressed and walked to AmeriStop for wine"; and "[u]pon return, [she was] struck by [Nussbaum]'s car."

{¶ 6} There was also conflicting evidence presented at the contested traffic hearing on whether Nussbaum was talking on his cell phone at the time of the accident. Nussbaum denied that he was talking on a cell phone at the time of the accident. However, his cell phone records show that he received a cell phone call from his ex-wife about seven minutes before the accident and that he spoke with his ex-wife on his cell phone for about three

minutes after the accident. Nussbaum acknowledged during his testimony that his cell phone did ring shortly before the accident, but he testified that he did not answer it, and instead, took his cell phone out of his coat pocket and set it on his front car seat, because he did not believe in talking on his cell phone while he was driving. Robinson, on the other hand, testified that when Nussbaum came up to her as she was administering aid to appellant following the accident, he was talking on his cell phone. Robinson testified that she told Nussbaum that if he was trying to call the police or for an ambulance, others had already done so, at which point Nussbaum told her that he was talking to his ex-wife and that he had been doing so at the time he struck appellant.

{¶ 7}  Appellant filed a civil complaint against Nussbaum in the Butler County Common Pleas Court, alleging that he was negligent for (1) violating his duty of care under R.C. 4511.48 to avoid hitting a pedestrian, (2) failing to maintain the assured clear distance ahead as required by R.C. 4511.21, (3) operating his vehicle in willful disregard for Neu's safety in violation of R.C. 4511.20, and (4) failing to maintain reasonable control of his vehicle in violation of R.C. 4511.202.

{¶ 8}  When Nussbaum died during the pendency of the proceedings, appellant successfully moved to have Nussbaum's estate (appellee) substituted as the party defendant in the action. Appellee moved for summary judgment on all of appellant's claims, and appellant filed a "brief" in opposition. During the summary judgment proceedings, the parties filed an agreed stipulation in which they agreed that the testimony of Nussbaum, Vannelle, and Robinson, as contained in the redacted transcript of the contested traffic hearing in *State of Ohio v. Barbara Neu*, Case No. TRD 120253, "shall be admissible for purposes of [the] summary judgment proceedings."

{¶ 9}  The trial court granted appellee's motion for summary judgment, finding that (1) under R.C. 4511.48, appellant's stepping into the roadway violated Nussbaum's right-of-way

and that there was no evidence that Nussbaum should have expected appellant to do so; (2) appellant suddenly appeared in Nussbaum's path, and therefore Nussbaum did not fail to maintain an assured clear distance ahead; and (3) the mere allegation of Nussbaum's cell phone use at the time of the accident did not create genuine issues of material fact as there was no evidence that such cell phone use distracted his attention or otherwise had some negative impact on his operation of his vehicle. The trial court assumed for purposes of summary judgment that Nussbaum was talking on his cell phone at the time of the accident, but the trial court did not mention whether appellant was intoxicated at the time of the accident.

{¶ 10} Appellant now appeals, assigning the following as error:

{¶ 11} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 12} Appellant argues the trial court erred in granting summary judgment to appellee, because there a number of material facts in dispute as to how the accident occurred and appellee failed to rebut the report of her accident-reconstruction expert, Kevin S. Bryant, which called into question appellee's version of the accident. Appellant asserts that she demonstrated a genuine issue of material fact by showing that appellee owed her a duty of care, that he breached that duty when he struck her with his vehicle, and that she suffered significant personal injuries as a result of that breach. She also contends that there is a comparative negligence issue in this case remaining to be litigated.

{¶ 13} This court's review of a trial court's ruling on a motion for summary judgment is de novo, *Grizinski v. Am. Express Fin. Advisors, Inc.,* 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.), meaning that we use the same standard the trial court should have used in ruling on the motion. *Morris v. Dobbins Nursing Home,* 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 14. Summary judgment is appropriate when there are no genuine

issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties, L.L.C.,* 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.).

{¶ 14} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials showing there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* However, if the moving party meets its burden, the burden then shifts to the nonmoving party to present evidence demonstrating that some issue of material fact remains to be resolved. *Id.*

{¶ 15} "All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made." *Dobbins Nursing Home* at ¶ 15, citing *Morris v. First Natl. Bank & Trust Co.,* 21 Ohio St.2d 25, 28 (1970). Applying this principle here, we note that since the parties presented conflicting evidence on the questions of whether Nussbaum was talking on his cell phone at the time of the accident and whether appellant was intoxicated at the time of the accident, we must assume that Nussbaum *was* talking on his cell phone at the time of the accident, as the trial court *expressly* found in its decision, and that appellant was *not* intoxicated at or near the time the accident occurred.

{¶ 16} R.C. 4511.48(A) states that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles * * * upon the roadway." "'Right of way' means, as the context requires * * * [t]he right of a vehicle * * * or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to

another vehicle * * * or pedestrian approaching from a different direction into its or the individual's path." R.C. 4511.01(UU)(1). R.C. 4511.48(E) provides that "[t]his section does not relieve the operator of a vehicle * * * from exercising due care to avoid colliding with any pedestrian upon any roadway." "Due care" is also termed "ordinary care" or "reasonable care," and "reasonable care" is defined "[a]s a test of liability for negligence, the degree of care that a prudent and competent person engaged in the same line of business or endeavor would exercise under similar circumstances." *Black's Law Dictionary* 225 (8th Ed. 2004).

{¶ 17} "Generally, a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle or pedestrian approaching from a different direction into its path." *Higgins v. Bennett*, 12th Dist. Clinton No. CA99-08-022, 2000 WL 253672, *2, citing R.C. 4511.01(UU)(1). *See also Snider v. Nieberding*, 12th Dist. Clermont No. CA2002-12-105, 2003-Ohio-5715, ¶ 9; *Zieger v. Burchwell*, 12th Dist. Clermont No. CA2009-11-077, 2010-Ohio-2174, ¶ 18. "Pedestrians crossing a roadway at any point other than a marked crosswalk must yield to this preferential right of way of vehicles." *Higgins*, citing R.C. 4511.48(A). "A driver need not look for pedestrians or vehicles violating his right-of-way." *Higgins*, citing *Deming v. Osinki*, 24 Ohio St.2d 179, 180-181 (1970) (rejecting the argument that drivers with the right-of-way are required to "look, look effectively and continue to look and remain alert"). However, R.C. 4511.48(E) provides that nothing in R.C. 4511.48 relieves a driver of his duty to exercise "due care to avoid colliding with any pedestrian upon any roadway." Therefore, a driver must exercise due care to avoid colliding with a pedestrian even if the pedestrian is in the driver's right way in violation of R.C. 4511.48(A). See R.C. 4511.48(E).

{¶ 18} Nevertheless, a driver "must exercise due care to avoid colliding with a pedestrian in his right-of-way only upon discovering a dangerous or perilous situation." *Higgins*, citing *Deming*; R.C. 4511.48(E); *Hawkins v. Shell*, 8th Dist. Cuyahoga No. 72788,

1998 WL 289385, *2. As stated in *Wallace v. Hipp*, 6th Dist. Lucas No. L-11-1052, 2012-Ohio-623, ¶ 17:

> [A] driver with the right of way must use ordinary care not to injure another who has blocked the right of way and has created a perilous condition. This duty only arises, however, after the other driver or pedestrian has failed to yield and after the driver with the right of way has realized that there is a clearly dangerous condition in the right of way. Therefore, the driver with the right of way is not required to anticipate that this situation might occur, and may proceed along the right of way under the assumption that the right of way will be respected.

(Citations omitted.) *See also Wall v. Sprague*, 12th Dist. Clermont No. CA2007-05-065, 2008-Ohio-3384, ¶ 15 (duty of care to avoid striking pedestrian would have arisen only after driver discovered that the pedestrian was in his right-of-way.)

{¶ 19} Additionally, as stated in *Joyce v. Rough*, 6th Dist. Lucas No. L-10-1368, 2011-Ohio-3713, ¶ 16:

> [O]nce a driver discovers a dangerous situation caused by a pedestrian in his right of way, the driver must exercise due care to avoid injuring the pedestrian. Ordinary care is that degree of care which persons of ordinary care and prudence are accustomed to observe under the same or similar circumstances, and the degree of care required of a motorist is always controlled by and depends upon the "* * * place, circumstances, conditions, and surroundings." The degree of care constituting ordinary care may also depend upon the type of pedestrian the driver can expect to be in the vicinity.

(Citations omitted.)

{¶ 20} Here, Nussbaum testified that he did not notice appellant walking alongside West Chester Road until he saw her about a car-length ahead of him. Nussbaum testified that appellant then turned into his path and walked in front of his lane of travel and that he did not have time to stop before he hit her. There were two witnesses who corroborated Nussbaum's testimony: Vannelle, who was driving behind Nussbaum at the time of the accident, and Robinson, who was sitting in her vehicle at the corner of West Chester and

Revere at the time of the accident.

{¶ 21} Vannelle testified that she saw appellant

> walking on the right hand side of the road, carrying a white bag and she started to kind of wobble, go, walk crooked, and the car in front of me [i.e., Nussbaum's vehicle] did slow down and she started to walk on the white line[;] she was walking straight and then he went to go around her and as soon as he went to go around her, she basically walked straight in front of the car.

{¶ 22} Robinson's testimony at the contested traffic hearing is critical in this case, and therefore it must be carefully examined at length. Robinson testified as a witness on appellant's behalf at appellant's criminal trial, as follows:

> Mr. Whitaker [appellant's counsel]: * * * [D]id you have an opportunity to see a lady walking along [West Chester Road]?
>
> [Robinson]: Yeah, I was looking for traffic because it's hard to turn left onto that road because it's so busy that time of day especially, I was looking up for traffic and I noticed a woman, at first I thought she was getting her mail, which is unusual for anyone on that road to do that time of day cause it is such a dangerous road and then I noticed she was actually walking up the road so I saw her walking up, but she wasn't on the street[,] she wasn't in the grass[,] she was on the road, which struck me as odd.
>
> Mr. Whitaker: And how for was she on the road?
>
> [Robinson]: There really is no shoulder to West Chester Road; it is just like a ditch on both sides so she was on the other side of the white line. If this was the white line she was probably about here, walking. So maybe a foot or two in.
>
> Mr. Whitaker: And would you please tell the court what you observed on that date?
>
> [Robinson]: Well, when I saw her walking in the road, I noticed she wasn't looking for traffic and it struck me as strange, I live in the area and I know that road well and it is a very dangerous road and I thought it just didn't seem right that she was walking in that road, then I noticed a silver car like an SUV come past, and I just expected him to slow down or stop because of where she was in the road and the way that road is, and I did notice the brake lights came on, but there was no screech or stop or swerve and as she's walking, he is coming up she cut across into the

road like she turned into and I saw him strike her, I didn't know it was a ["]him["] at the time, but I saw the car strike her and she kind of flew up in the air and then landed in the road."

* * *

Mr. Whitaker:  Just before the collision were you observing the motor vehicle that struck her[?].

[Robinson]:  I saw it go by and again with her in the road it, with that road it did not make sense to me that she was in the road I saw the car came up I expected him to slow down or come to a stop based on what was going on I did see him put brakes on, and he was not speeding, at least didn't seem to be to me, but he didn't slow down very much.

Mr. Whitaker:  Could he have gone into the left lane to avoid striking her?

[Robinson]:  No there was a lot of traffic coming down the road.

Mr. Whitaker:  You said you saw his brake lights come on.

[Robinson]:  I believe so, yes.

Mr. Whitaker:  How long approximately were the brake lights on?

[Robinson]:  Shortly before he struck her * * *[.]

{¶ 23} The prosecutor cross-examined Robinson, as follows:

Mr. Venditti:  * * * [R]ight before [appellant] was struck * * *, was she in the road?

[Robinson]:  Yes.

Mr. Venditti:  When she was struck?

[Robinson]:  Yes.

Mr. Venditti:  Did she walk out in the road?

[Robinson]:  Yes she was walking in the road, like I said not far into for that road in particular and as he was coming up she walked in front of him[.]

Mr. Venditti:  She walked in front of him?

[Robinson]:  The other thing I noticed is she was not looking for

traffic, I mean if you were walking on that part of the road any reasonable person would be checking where traffic is[.]

Mr. Venditti: And you didn't see her do that?

[Robinson]: No.

{¶ 24} On redirect, appellant's counsel questioned Robinson as follows:

Mr. Whitaker: If you would have been, person [sic] coming up West Chester Road and (inaudible) Revere Run and you saw her up ahead would you have continued to drive your motor vehicle the same way that the motor vehicle was driven by the individual that struck her?

* * *

[Robinson]: Given the way that road is I would have slowed down to a crawl or stopped. There is no way to go around her to give her any room and the way at 5:30 on West Chester Road, it is a very dangerous road and so to have anyone walking where she was I would have come to a complete stop or slowed down tremendously.

{¶ 25} The prosecutor then questioned Robinson as follows:

Mr. Venditti: How long was it before when she started walking out into the road, about how long was it until the vehicle struck her?

[Robinson]: You know time, everything happened so fast, when you witness something like that she maybe only got 5 or 10 feet from the time I saw her to the time she started walking till she got struck, does that give you enough reference?

Mr. Venditti: (Inaudible)

[Robinson]: I mean there was some time frame I am trying to think exactly it is hard to say cause you know all this stuff is playing in your mind and when you're watching it unfold, she didn't get very far before she was struck.

* * *

Mr. Venditti: Would it be fair to say then that he would not, the driver of the vehicle would have not had time to respond?

[Robinson]: Well where I was at the stop sign my perspective is I saw her walking in the road then he came up so he essentially in

- 11 -

theory is having the same perspective that I am having at that vantage point except he was in motion[.]

Mr. Venditti: Okay, let me try that question again for (inaudible), do you think he could have avoided hitting her?

[Robinson]: I think if he had come to a come slow, slowed down when he saw her in the road or come to a stop than possible yes. [*Sic.*]

Mr. Venditti: Do you think traveling at the speed that you saw him traveling at did he have enough time to react to avoid hitting her?

[Robinson]: Yes I think cause he had to have seen her when I saw her when he was passing I probably saw her first cause I am sitting, and then he came up so he is at the same point that I am watching her, Yes there is two yards not lawns [two] yards space, and I would say yes, he was not speeding, he was not traveling at a great rate of speed.

Mr. Venditti: Okay, but you can't tell me how long she was in the road before he struck her?

[Robinson]: No, because when I pulled to the stop sign, like I said, I thought she was getting her mail and right away I thought that was odd, then she started walking and then I saw his car come and I, so I cannot[.]

Mr. Venditti: A second, half a second, five seconds?

[Robinson]: Five seconds maybe six seconds.

Mr. Venditti: She was out in the road for five seconds before?

[Robinson]: Yes, she was walking for I mean she made a good ten feet, I mean I do not know how long it takes to walk ten or fifteen feet.

Mr. Venditti: Okay, your telling me she was out in the middle of the road, he had plenty of time to stop, is that what you are telling me?

[Robinson]: I would at least think he could have slowed down or stopped, if he saw her where I was like I saw her he would have time[.]

Mr. Venditti: Let me ask you this. The whole time you were observing her did she change positions or was she always

walking one [*sic*] point in the road?

[Robinson]: She was walking pretty steady until just at the time he was coming and she turned in front of him[.]

Mr. Venditti: Okay *so when she turned in front of him do you still think traveling at the speed he was traveling he had time to stop and avoid hitting her?*

(Emphasis added.)

{¶ 26} Appellant's counsel objected to the last question on grounds that it was "[s]peculative" and already "ha[d] been answered." The prosecutor responded that the question had not been answered. The trial court ruled on the objection as follows:

Judge: * * * I am going to say that the question has not been asked and answered[;] it is a clarification because it seemingly was her answer that he could have stopped when she was in the road but the clarification is okay[;] yes he could have stopped while she was walking along the road, but when she made this move further into the road could he have stopped[?,] and that I think * * * is a different question, so that question stands and you can answer that question[.]

[Robinson]: M*y answer would be no*[.]

(Emphasis added.)

{¶ 27} While Robinson testified that she would have slowed down upon seeing appellant and that she believed if Nussbaum had slowed down, he could have avoided hitting appellant, Robinson nevertheless testified that when appellant crossed West Chester Road and walked into the path of Nussbaum's vehicle, Nussbaum did not have time to avoid hitting appellant. Nussbaum did not have a duty to "look, look effectively and continue to look and remain alert" for pedestrians like appellant violating his right-of-way. Rather, it was appellant who had a duty to yield to Nussbaum's right-of-way. *Higgins*, 2000 WL 253672 at *4, citing R.C. 4511.48(A). Additionally, while Nussbaum was required to use due care not to injure appellant while she was blocking his right-of-way and thereby creating a perilous situation, this duty arose only after appellant failed to yield the right-of-way to Nussbaum and

- 13 -

Nussbaum realized that there was a clearly dangerous condition in his right-of-way. *Wallace*, 2012-Ohio-623 at ¶17. Nussbaum was not required to anticipate that this situation might occur, and was allowed to proceed along his right-of-way under the assumption that his right-of-way would be respected by appellant. *Id.*

{¶ 28} Appellant asserts that she "has never stated that she was crossing [West Chester Road] at the time [Nussbaum] struck her. * * * Rather, [she] stated that she was walking on the berm of the road, lost her footing and stumbled into the road." Appellant cites her affidavit in support of this last contention. However, a review of appellant's affidavit shows that she did not state that she "stumbled *into* the road." Instead, appellant stated in her affidavit that "[a]s I was walking on the berm [of West Chester Road], I remember losing my footing a bit now and then due to the conditions on the berm. I sensed something behind me, I looked over my shoulder, and the next thing that I remember is arriving at the hospital." What is clear from appellant's affidavit, then, is that appellant simply does not know if she was in Nussbaum's lane of travel on West Chester Road, because she testified in her affidavit that she has no memory of what happened after "she sensed something behind [her]" and "looked over [her] shoulder[.]"

{¶ 29} The report of appellant's accident-reconstruction expert, Bryant, states that Nussbaum's vehicle sustained damage to the passenger side front fender, above and behind the front tire[;] the passenger side mirror was missing, and the lower passenger side of the windshield was damaged, but there was no damage to the hood of Nussbaum's vehicle. Bryant concluded in his report that it was "unclear exactly where [appellant] was when the crash occurred[.]" Nevertheless, Bryant stated that "[i]t is *possible*, given the anatomy of how this crash occurred, that [appellant] was very near the white edge line of the eastbound lane when she was struck." (Emphasis added.) Earlier in his report, Bryant stated that "[h]ad [appellant] been on the edge of the roadway when this crash occurred, her body could still

have landed in the roadway [as appellant's body did, according to the testimony of both Vannelle and Robinson]." Bryant stated that by striking appellant's left leg with Nussbaum's vehicle as Nussbaum was turning away to the left, the momentum of Nussbaum's vehicle "could have pulled [appellant] out into the roadway [where her body landed]." Bryant explained that "[a] vehicle, even moving at a relatively slow speed of 20 mph, has a tremendous amount of momentum, when compared to the momentum possessed by a pedestrian" and that "[t]he side of [Nussbaum's] vehicle could [have] easily propel[led] [appellant] further into the roadway." Bryant also concluded in his report that "[e]ven if she was as much as five feet inside the white edge line, there was still room for Mr. Nussbaum's car to evade [appellant] and not cross the centerline."

{¶ 30} Appellant is essentially raising two arguments on appeal. First, appellant is arguing that a genuine issue of material fact exists as to whether she was inside or outside the white pavement edge line on West Chester Road at the time she was struck by Nussbaum's vehicle. Second, appellant is arguing, in the alternative, that even if she was inside the pavement edge line on West Chester Road, and thus, was in Nussbaum's right-of-way, a genuine issue of material fact still exists as to whether Nussbaum complied with his duty to exercise due care to avoid colliding with her while she was blocking his right-of-way upon discovering a dangerous or perilous situation, as required under cases like *Higgins*. We find both of these arguments unpersuasive.

{¶ 31} As stated above, it is clear from her affidavit that appellant was unable to testify whether she was inside or outside the pavement edge line at the time of the collision because she has no memory of being hit by Nussbaum's vehicle. As for the report of her accident-reconstruction expert, Bryant asserted in his affidavit that it was "possible" that appellant "was very near the white edge line" of the roadway when she was struck and that the momentum of Nussbaum's vehicle "*could* have pulled [appellant] out into the roadway

[where Bryant's body was found immediately after the collision]." (Emphasis added.) However, Bryant acknowledged in his affidavit that "[i]t is unclear where [appellant] was when the crash occurred."

{¶ 32} The only evidence that exists as to where appellant was when the crash occurred is the testimony of Nussbaum, Vannelle and Robinson. Nussbaum testified that the accident occurred when appellant walked in front of the path of his vehicle and that he did not have time to avoid hitting her. Both Vannellee and Robinson corroborated Nusssbaum's testimony. Additionally, Bryant's opinion testimony about where the impact may have occurred is based on the nature of appellant's injuries. However, the fact that appellant's left leg was injured in the accident while her right leg was not is perfectly consistent with Nussbaum's testimony at appellant's criminal trial. Nussbaum acknowledged that when appellant walked out in front of his car, he swerved "[j]ust a little bit" in an attempt to avoid her, but then had to "swerve[] to avoid the cars coming down the hill [in the opposite lane]." Thus, Bryant's expert opinion testimony does not create a genuine issue of material fact in this case even when the evidence is examined in the light most favorable to appellant as the nonmoving party. *Dobbins Nursing Home,* 2011-Ohio-3014 at ¶ 15.

{¶ 33} Appellant argues that a genuine issue of material fact exists in this case as to whether Nussbaum exercised due care as required by R.C. 4511.48(E). In support of this argument, appellant points to the conclusion of her accident reconstruction expert, Bryant, who stated in his report that "[e]ven if [appellant] was as much as five feet inside the white edge line, there was still room for Mr. Nussbaum's car to evade her and not cross the centerline." Once again, however, Bryant could not definitively state where appellant was at the time of the crash. By contrast, Nussbaum, Vannelle and Robinson testified that appellant walked across the roadway into Nussbaum's lane of travel at the time of the accident and that Nussbaum did not have time to stop his vehicle to avoid hitting her. In view of that

unrebutted testimony, Bryant's speculation about where appellant was at the time she was struck by Nussbaum's vehicle does not create a genuine issue of material fact.

{¶ 34} Appellant argues that a genuine issue of material fact exists as to her claim that Nussbaum violated Ohio's assured clear distance statute in R.C. 4511.21(A).

{¶ 35} R.C. 4511.21(A) states in pertinent part:

> (A) No person shall operate a motor vehicle * * * at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.

{¶ 36} "A driver violates R.C. 4511.21(A) if he collides with an object that (1) is ahead of him in his path of travel, (2) is stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) is reasonably discernible. *Wilson v. Maple*, 12th Dist. Clermont No. CA2005-08-075, 2006-Ohio-3536, ¶ 13, citing *Pond v. Leslein*, 72 Ohio St.3d 50, 52 (1995). The party invoking the statute must present evidence establishing each of the four elements in order to establish that a statutory violation occurred. *Wilson* at ¶ 13-20.

{¶ 37} Here, while the second and fourth requirements may have been met, the first and third requirements clearly were not. The first factor is not met since appellant was not initially in Nussbaum's path of travel but walked into it from the berm of the roadway. The third factor is also not met since the only evidence in the record on whether appellant suddenly appeared in Nussbaum's path was the testimony of Nussbaum, Vannelle and Robison, all of whom testified that appellant did suddenly appear in the path of Nussbaum's vehicle by taking at least two to three steps into it and that Nussbaum did not have time to stop.

{¶ 38} Appellant notes that her expert Bryant opined that Nussbaum "had ample time

and distance to see [appellant] walking on the roadside." However, this misses the point. In determining whether Nussbaum violated the assured-clear-distance rule, the issue is not whether he observed appellant at any particular point in time but whether she suddenly appeared in his path. Again, the testimony of Nussbaum, Vannelle and Robinson unequivocally indicates that appellant suddenly appeared in Nussbaum's path, and appellant presented no evidence to contradict this testimony.

{¶ 39} Appellant also argues that R.C. 4511.21 "imposes a much greater duty than driving within the posted prima facie speed limit. It imposes a duty to drive at a speed that is reasonable for the conditions and circumstances." Appellant contends that Nussbaum did not drive at a reasonable speed for the conditions of the road on which the collision occurred and the circumstances that existed at the time of the accident. In support of her contention, she cites Robinson's testimony in which Robinson stated:

> Given the way that [West Chester Road] is[,] I would have slowed down to a crawl or stopped. There is no way to go around her [i.e., appellant] to give her any room and the way at 5:30 [p.m.] [that] West Chester Road [is], it is a very dangerous road and so to have anyone walking where she was[,] I would have come to a complete stop or slowed down tremendously.

However, this argument also misses the point.

{¶ 40} First, appellant is implicitly conceding, as she must, that Nussbaum was traveling at the speed limit at the time of the accident. Nussbaum, Vannelle and Robinson all testified to this and appellant presented no evidence to contradict the testimony of these three witnesses. Second, Nussbaum clearly had the right-of-way and appellant was obligated to yield the right-of-way to his vehicle under R.C. 4511.48(A). Third, despite Robinson's testimony as to what she would have done had she been in Nussbaum's place, Nussbaum was not obligated to "look, look effectively and continue to look and remain alert" for pedestrians violating his right-of-way. *Deming*, 24 Ohio St.2d 179, 180-181. Fourth, while

Nussbaum had a duty to exercise due care to avoid colliding with appellant even though she was blocking his right-of-way in violation of R.C. 4511.48(A), this duty arose only after appellant failed to yield the right-of-way and only after Nussbaum realized that there was a clearly dangerous condition in his right-of-way. *Wallace*, 2012-Ohio-623 at ¶ 17. Nussbaum, who had the right-of-way, was not required to anticipate that this situation might occur, and was permitted to proceed along the right-of-way under the assumption that the right-of-way would be respected by appellant. *Id.* This is particularly true in this case, as appellant was an adult and not a child to whom Nussbaum would have owed a greater degree of care. *Rayoum v. Adams*, 6th Dist. Lucas No. L-97-1370, 1998 WL 421589 (July 24, 1998) (a heightened duty of care is owed where young children are expected to be present).

**{¶ 41}** Appellant also argues that the trial court erred by not finding that Nussbaum's use of a cell phone at or near the time he was driving created a genuine issue of material fact as to whether he was operating his vehicle unlawfully under R.C. 4511.20(A). She also asserts that a genuine issue of material fact exists on whether Nussbaum should be held comparatively negligent.

**{¶ 42}** R.C. 4511.20(A) states that "[n]o person shall operate a vehicle * * * in willful or wanton disregard of the safety of persons or property." In *State v. Earlenbaugh*, 18 Ohio St.3d 19, 21-22 (1985), the court discussed the standard to be applied in determining whether a person is guilty of intentional or reckless operation of a motor vehicle under R.C. 4511.20(A):

> A person may be found guilty of violating R.C. 4511.20 if he acts willfully. Such conduct implies an act done intentionally, designedly, knowingly, or purposely, without justifiable excuse. Black's Law Dictionary (5 Ed.1979) 1434. Or conversely, R.C. 4511.20 is violated when a person acts wantonly in disregard of the safety of others. A wanton act is an act done in reckless disregard of the rights of others which evinces a reckless indifference of the consequences to the life, limb, health, reputation, or property of others. *Id.* at 1419. [Footnote omitted.]

Similarly, when the operator of a vehicle, with full knowledge of the surrounding circumstances, recklessly and inexcusably disregards the rights of other motorists, his conduct may be characterized as wanton. *Hawkins v. Ivy, supra.*

{¶ 43} Additionally, R.C. 4511.202(A) states that "[n]o person shall operate a motor vehicle * * * on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle[.]" In *Wallace*, 2012-Ohio-623 at ¶21, 23, the court rejected a claim that a driver was not in control of her vehicle or was not paying attention to her driving in violation of R.C. 4511.202, noting that no evidence had been presented that the driver was speeding or otherwise operating her vehicle in an unsafe manner. The court added that "[t]his is not a case where a driver was *talking on a cell phone*, fiddling with the radio, or engaged in any other distracting behavior. * * * Therefore, summary judgment was properly granted as to this claim * * *." (Emphasis added.) *Id*.

{¶ 44} In contrast to *Wallace*, this *is* a case where the driver was talking on a cell phone at the time of the accident, since this court, like the trial court, has to assume for purposes of summary judgment that Nussbaum was talking on his cell phone at or near the time the collision occurred. We agree that the question of whether a driver was talking on his or her cell phone at or near the time an accident occurred is of great importance in determining whether the driver was exercising due care "to avoid colliding with any pedestrian upon any roadway[,]" as required by R.C. 4511.48(D). Nevertheless, we agree with the trial court that even when the evidence is examined in a light most favorable to appellant as the nonmoving party, there is no evidence in the record to suggest that Nussbaum acted willfully or recklessly in violation of R.C. 4511.20(A), or that he was not in reasonable control of his vehicle in violation of R.C. 4511.202(A), simply because he was using a cell phone at or near the moment the accident occurred.

{¶ 45} Nussbaum, Vannelle, and Robinson all testified that appellant suddenly cut into

Nussbaum's lane of travel, leaving him no time to avoid hitting appellant. That appellant suddenly cut into Nussbaum's lane of travel was unrebutted by appellant. Neither Vannelle nor Robinson could see whether appellant was using a cell phone at the moment the accident occurred. Shortly after the collision occurred and while she was assisting appellant, Robinson learned that Nussbaum had been using his cell phone when the accident occurred. However, even though Robinson had learned before the contested traffic hearing that Nussbaum had been talking on his cell phone at the moment the accident occurred, Robinson nevertheless testified that when appellant turned into Nussbaum's path, Nussbaum did not have time to avoid hitting her. In light of these circumstances, there is no evidence in the record to establish that appellant's cell phone use distracted him to an extent that it created a genuine issue of material fact as to whether Nussbaum was exercising due care toward appellant, as required under R.C. 4511.48(E).

{¶ 46} Additionally, since there is no evidence to show that Nussbaum was driving unlawfully under R.C. 4511.20(A) or 4511.202(A), appellee could not be held comparatively negligent as the comparative negligence of the driver with the right-of-way does not become an issue for trial without evidence that the driver with the right-of-way was also driving unlawfully. *See Lydic v. Earnest,* 7th Dist. Mahoning No. 02 CA 125, 2004-Ohio-3194, ¶ 25-36*.*

{¶ 47} Accordingly, appellant's assignment of error is overruled.

{¶ 48} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.