[Cite as *Smith v. Bond*, 2016-Ohio-5883.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CHARLES E. SMITH, JR., ET AL., | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| V. | ) | CASE NO. 15 BE 0078 |
| | ) | |
| ROBERT E. BOND AND GARY L. | ) | OPINION |
| DETEMPLE, CO-FIDUCIARIES OF THE | ) | |
| ESTATE OF ROBERT E. BOND, | ) | |
| DECEASED, | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Court of Common
Pleas of Belmont County, Ohio
Case No. 12 CV 262

JUDGMENT:                                    Reversed and Remanded

APPEARANCES:
For Plaintiffs-Appellants              Attorney Frank X. Duff
The Maxwell Centre, 32 20th St.
Wheeling, West Virginia 26003

For Defendant-Appellee              Attorney Donald P. Wiley
400 S. Main Street
North Canton, Ohio 44720

JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: September 15, 2016

DONOFRIO, P.J.

{¶1} Plaintiffs-appellants, Charles and Emma Smith, appeal from a Belmont County Common Pleas Court judgment granting summary judgment in favor of defendants-appellees, Robert F. Bond and Gary DeTemple co-fiduciaries of the Estate of Robert E. Bond, on appellants' personal injury claim against Robert E. Bond.

{¶2} On November 5, 2011, Charles Smith (Smith) was leaving DeFelice Bros. Pizza on Central Avenue in Shadyside, for whom he worked, to deliver a pizza with a co-worker. His car was parked on the other side of the street from the pizza shop. As Smith crossed the street, a vehicle driven by Robert E. Bond (Bond) struck him. A crosswalk existed at the corner but the paint was at least partially worn off. Smith was not in the worn-off crosswalk when Bond struck him. Smith suffered injuries as a result of the accident.

{¶3} Appellants filed a complaint against Bond raising claims for negligence and loss of consortium.

{¶4} Bond filed a motion for summary judgment on July 15, 2013, asserting there were no genuine issues of material fact that Smith crossed Central Avenue outside of the marked crosswalk and failed to yield to Bond's right-of-way. Therefore, Bond claimed summary judgment was appropriate. Appellants filed a response arguing there was a genuine issue of material fact as to whether the crosswalk was maintained for use in the area and, even if Bond had the right-of-way, it was forfeited by his failure to proceed in a lawful manner.

{¶5} Bond passed away shortly after filing the motion for summary judgment. On August 5, 2013, Bond's counsel filed a suggestion of death informing the trial court that on July 31, 2013, he received actual knowledge of Bond's death. Nonetheless, on August 29, 2013, the trial court granted Bond's summary judgment motion. The court did not mention the issue of Bond's death. Appellants filed a timely notice of appeal from the court's summary judgment entry. None of the parties filed a motion for substitution of parties prior to filing the appeal.

{¶6} Consequently, on appeal, this court found the trial court's decision to

rule on Bond's summary judgment motion after the notice of Bond's death raised a jurisdictional problem. *Smith v. Bond*, 7th Dist. No. 13 BE 27, 2015-Ohio-2585. We found that because a suggestion of Bond's death was filed while the motion for summary judgment was pending, and because no substitution of parties was made, the trial court could not rule on Bond's motion for summary judgment because it lacked personal jurisdiction over Bond. *Id.* at ¶ 4. Therefore, we reversed the trial court's grant of summary judgment and remanded the case with instructions to allow the parties, or Bond's successors or representatives, to file a motion for substitution under Civ.R. 25(A). *Id.* at ¶ 13. We further instructed that if a motion for substitution was timely filed, the trial court was to again determine the merits of the case. *Id.*

{¶7} On our remand, appellants filed a motion for substitution of parties to name appellees, the co-fiduciaries of Bond's estate, as the defendants in this case. The trial court granted the motion for substitution of parties.

{¶8} Appellees then filed a motion for summary judgment and appellants filed a response. The trial court granted appellees' motion for summary judgment. It found there was no genuine issue of material fact that Smith did not have the right to cross the street outside of the marked crosswalk. It further found there was no evidence that Bond failed to act with due care. Appellants filed a timely notice of appeal on November 24, 2015.

{¶9} Appellants now raise a single assignment of error that states:

THE TRIAL COURT ERRED IN ITS OPINION AND JUDGMENT ORDER DATED NOVEMBER 6, 2015, (EXHIBIT 1) GRANTING SUMMARY JUDGMENT TO DEFENDANT ROBERT E. BOND.

{¶10} An appellate court reviews the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶11} A court may grant summary judgment only when (1) no genuine issue

of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist., 2015-Ohio-4167, 44 N.E.3d 1011, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶12}** Appellants argue that any crosswalk that may have been painted on the street was worn off. They refer us to copies of photographs of the crosswalk that they attached to their response to the summary judgment motion and also to their appellate brief. Appellants also point to Smith's deposition testimony that the area where the accident occurred is a business district and the crosswalk is not marked or used. They note that there is no sidewalk from DeFelice Bros. Pizza adjacent to the narrow, grassy median where someone could walk from a parked vehicle to the alleged crosswalk. Appellants claim that anyone who parks in that area must either cross the street without a crosswalk or walk on the road up to the area of the alleged crosswalk.

**{¶13}** Appellants also argue that Bond failed to use due care when proceeding on Central Avenue. They point out that both Smith and Molly Roberts, Smith's co-worker, stated that they looked both ways before crossing the street and did not see Bond's vehicle. They point to Roberts' statement that it looked like Bond changed his mind and instead of turning he went straight and sped up, hitting Smith. Appellants also point to the statement of witness Jeff Greenwood who stated that he had to yield to Bond's van, which started to make a left turn but suddenly turned back

and accelerated. Appellants argue that if a driver suddenly changes direction and accelerates while failing to see a pedestrian in his path, it creates a genuine issue of material fact as to whether the driver exercised due caution.

{¶14} In a negligence claim, the plaintiff must prove (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996). The question in this case surrounds whether Bond owed a duty to Smith and whether he breached that duty.

{¶15} R.C. 4511.48(A) provides, "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles * * * upon the roadway." Nonetheless, "[t]his section does not relieve the operator of a vehicle* * * from exercising due care to avoid colliding with any pedestrian upon any roadway." R.C. 4511.48(E). Therefore, a driver must exercise due care to avoid colliding with a pedestrian even if the pedestrian is in the driver's right way in violation of R.C. 4511.48(A). *Neu v. Estate of Nussbaum*, 12th Dist. No. CA2014-05-117, 2015-Ohio-159, 27 N.E.3d 906, 911, ¶ 17.

{¶16} "Generally, a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle or pedestrian approaching from a different direction crossing its path." *Zieger v. Burchwell*, 12th Dist. No. CA2009-11-077, 2010-Ohio-2174, ¶ 18, citing *Higgins v. Bennett*, 12th Dist. No. CA99-08-022, 2000 WL 253672, *2; R.C. 4511.01(UU)(1). When a pedestrian crosses a road at a point other than a marked crosswalk, the pedestrian must yield to a vehicle traveling in a lawful manner. *McQueen v. Perry*, 10th Dist. No. 12AP-237, 2012-Ohio-5522, ¶ 11; R.C. 4511.48(A). A driver is not required to look for pedestrians violating his right-of-way unless there is a reason to expect it. *Mull v. Madkins*, 8th Dist. No. 94554, 2010-Ohio-6360, ¶ 18.

{¶17} The Sixth District has explained how these seemingly conflicting interpretations of the law coexist:

R.C. 4511.48(A) and (E) have been reconciled into the rule that

a driver need not look for pedestrians or vehicles violating his right of way. See *Deming v. Osinki*, 24 Ohio St.2d 179, 180-81, 265 N.E.2d 554 (1970) (rejecting notion that drivers in the right of way must "look, look effectively and continue to look and remain alert"). Rather, the operator of a motor vehicle must exercise due care to avoid colliding with a pedestrian in his right of way only upon discovering a dangerous or perilous situation. *Id.*; *Hawkins v. Shell*, 8th Dist. No. 72788, 1998 WL 289385 (June 4, 1998); *Markley v. Knutson*, 3d Dist. No. 9-96-29, 1996 WL 546875 (Sept. 26, 1996). Moreover, a driver has no duty to look for danger unless there is reason to expect it. *Hawkins*, supra. Therefore, despite a vehicle operator's duty to exercise due care to avoid colliding with a pedestrian, a driver need not keep a lookout for vehicles or pedestrians violating his right of way. *Lumaye v. Johnson*, 80 Ohio App.3d 141, 608 N.E.2d 1108 (1992).

*Wallace v. Hipp*, 6th Dist. No. L-11-1052, 2012-Ohio-623, ¶ 13.

{¶18} In this case, the trial court found it was undisputed that Smith was leaving the pizza shop with a co-worker and attempted to cross the northbound lane of Central Avenue to reach his car. There was a crosswalk at the nearest intersection, but some of the paint was worn off of the crosswalk. Smith knew about the intersection and the crosswalk but did not use it. There is a dispute as to whether Bond struck Smith or Smith struck Bond. But the trial court found this fact was not material in light of the law and the lack of evidence that Bond failed to proceed with ordinary care.

{¶19} The court stated that it is only after a finding that the defendant's vehicle was not proceeding in a lawful manner, by violating a law or ordinance, that the consideration of the defendant's common law duty to use ordinary care comes into play. This was a misstatement of the law. As discussed above, a driver need not look for pedestrians violating his right-of-way. But once a driver notices a dangerous situation, the driver must exercise due care to avoid colliding with the

pedestrian who is in the driver's right-of-way.

**{¶20}** The court went on to find that Bond was lawfully travelling in his lane of traffic. Bond changed his mind as to a left turn and chose, instead, to proceed straight, which was his legal right. The court found there was no evidence whatsoever that Bond failed to act with due care in any manner. It noted that Bond may have sped up, but was within his right to do so. It found that Smith was negligent in crossing the street outside of the crosswalk and in violation of two statutes. Smith had a duty to yield to all traffic proceeding lawfully on Central Avenue, which Bond was doing. Smith failed to yield and was negligent per se. Smith's own negligence was the direct and proximate cause of his damages. Therefore, the trial court found there was no genuine issue of material fact precluding summary judgment.

**{¶21}** Both Smith and Bond each recounted the accident in their depositions.

**{¶22}** According to Smith, he was leaving the pizza shop to deliver a pizza with a co-worker. (Smith Dep. 21). Smith described Central Avenue as having a north and a south lane with a barrier of grass and trees separating the two lanes. (Smith Dep. 22). His truck was parked directly across the street on the road by the grass barrier. (Smith Dep. 23-24). He only needed to cross the north lane to get to his truck. (Smith Dep. 22).

**{¶23}** Smith stated there was a "worn off" crosswalk at the intersection preceding the pizza shop. (Smith Dep. 24-25). He stated half of the paint was worn off of the crosswalk. (Smith Dep. 25). Smith admitted he was not in the crosswalk when the accident occurred. (Smith Dep. 25). According to Smith, in the business section where the pizza shop is located, it is common knowledge that people just walk across the street. (Smith Dep. 27). He never went to the crosswalk to reach his car from the pizza shop. (Smith Dep. 27-28).

**{¶24}** Smith stated that before attempting to cross the street, he looked both ways. (Smith Dep. 21). He started to cross the street and heard his co-worker yell to him to watch out. (Smith Dep. 21). The next thing he knew, he was hit. (Smith dep.

21). Smith stated a van hit him and he went up onto the hood and then fell down. (Smith Dep. 28).

**{¶25}** According to Bond, he was driving north on Central Avenue. (Bond Dep. 36-37). He intended to make a left-hand turn but there was too much traffic, so he decided to continue straight. (Bond Dep. 54-55). Because there was a lot of traffic, he was only travelling at six to eight miles per hour. (Bond Dep. 38). Bond stated that out of the corner of his eye he noticed somebody coming across the street in his direction so he stopped. (Bond Dep. 38). He stated that the person who was crossing the street then walked into his vehicle and fell backward. (Bond Dep. 38).

**{¶26}** The police crash report was an exhibit in Bond's deposition. Bond's counsel did not object to the use of the crash report as a deposition exhibit. Bond was questioned by Officer Doty just after the accident. (Bond Dep. Ex. 2). On the crash report, in the section containing Bond's personal information, under the heading "offense description" the officer wrote, "Yield to Pedestrian/FTC." (Bond Dep. Ex. 2). Bond did not agree with this statement, however. (Bond Dep. And in the section containing Smith's personal information, under the heading "offense description" the officer left the space blank. (Bond Dep. Ex. 2). On another part of the crash report titled "contributing circumstances," the report listed "driver inattention" as a contributing circumstance for Bond. (Bond Dep. Ex. 2). As a contributing circumstance for Smith, the report listed "other." (Bond Dep. Ex. 2). On yet another part of the crash report titled "action," the officer indicated that Bond struck Smith. (Bond Dep. Ex. 2).

**{¶27}** The crash report also contained witness statements by Molly Roberts, Smith's co-worker, and Jeff Greenwood, another motorist who witnessed the accident. In her statement to police, Roberts stated that as she and Smith were walking across Central Avenue, she saw a white van coming toward Smith. She yelled to Smith to look out. Roberts stated it looked like the driver went to push the brakes but hit the gas instead and the van sped up before it hit Smith. (Bond Dep. 63). In his statement to police, Greenwood stated he was travelling across Central

Avenue to make a turn to go north and yielded to a Bond's van. He stated the van started to come across and then "all of a sudden turned right heading north." (Bond Dep. 65). Greenwood also indicated that Bond accelerated in order to make the turn and that the two pedestrians (Smith and Roberts) seemed to be unaware of the change of direction that the van made. (Bond Dep. 67-68). Finally, Greenwood stated that he saw Smith get hit and fall to the ground. (Bond Dep. 68). Roberts and Greenwood also gave affidavits with these same statements, which Smith submitted with his response to Bond's summary judgment motion.

{¶28} The undisputed facts are that Smith was attempting to cross Central Avenue to reach his car, which was parked on the other side across from the pizza shop. A crosswalk existed at the nearest intersection. Smith was not in the crosswalk. Smith and Roberts looked both ways before attempting to cross Central Avenue. Bond was travelling north on Central Avenue. He intended to turn left before he reached the area of the pizza shop. Bond changed his mind, however, when he noticed a lot of traffic and continued straight on Central Avenue.

{¶29} The facts are disputed as to what happened next. According to Smith, Roberts, and Greenwood, Bond struck Smith with his van. According to Bond, Smith walked right into his van when he stopped.

{¶30} More importantly, however, there is a dispute as to Bond's actions. According to the police report, Bond failed to yield to a pedestrian and failed to control his vehicle. The report also indicates that the cause of the accident was "driver inattention." Moreover, Roberts stated it appeared that Bond went to apply his brakes and instead accelerated into Smith. Greenwood also stated that Bond sped up. And Bond stated that through the corner of his eye, he saw someone coming across the street in his direction. Bond stated that when he saw the person he instantly stopped. Additionally, Bond stated that he intended to make a left-hand turn but then changed his mind and went straight. Greenwood stated that Bond's change of direction was "all of a sudden" and that Smith and Roberts appeared to be unaware of Bond's sudden change of direction.

{¶31} According to the case law set out above, a driver does not have a duty to look for pedestrians violating his right of way. *Wallace*, 6th Dist. No. L-11-1052, at ¶ 13; *Deming*, 24 Ohio St.2d at 180-181. Thus, Bond did not have a duty to be on the lookout for pedestrians crossing Central Avenue outside of the crosswalk or interserction. But a driver must exercise due care to avoid colliding with a pedestrian in his right-of-way upon discovering a dangerous or perilous situation. *Wallace*, 6th Dist. No. L-11-1052, at ¶ 13; *Hawkins*, 8th Dist. No. 72788; *Markley*, 3d Dist. No. 9-96-29. Therefore, if Bond noticed Smith crossing the street, thereby creating a perilous situation, Bond had a duty to exercise due care to avoid colliding with Smith. Whether Bond noticed Smith in time to avoid hitting him and whether Bond accelerated when he meant to brake are genuine issues of material fact.

{¶32} The trial court, relying on *Wallace*, supra, stated that under the law, it is only after it has been found that the defendant's vehicle was not proceeding in a lawful manner, by violating a law or ordinance, that the consideration of the defendant's common law duty to use ordinary care comes into play. *Wallace* does make this statement. *Wallace*, at ¶ 16. But it goes on to state:

> Thus, a driver with the right of way must use ordinary care not to injure another who has blocked the right of way and has created a perilous condition. * * * This duty only arises, however, after the other driver or pedestrian has failed to yield and after the driver with the right of way has realized that there is a clearly dangerous condition in the right of way. * * * Therefore, the driver with the right of way is not required to anticipate that this situation might occur, and may proceed along the right of way under the assumption that the right of way will be respected.

(Internal citations omitted); *Id.* at ¶ 17. Moreover, in *Wallace* unlike in the case at bar, the court pointed out that there was nothing in the record to show that the defendant actually saw the plaintiff prior to the collision. *Id.* at ¶ 19. In this case,

Bond stated that he noticed Smith out of the corner of his eye.

**{¶33}** Additionally, *Wallace* cited to this court's decision in *Lydic v. Earnest*, 7th Dist. No. 02 CA 125, 2004-Ohio-3194. That case involved a crash between two vehicles, one which was travelling lawfully and the other that failed to yield to the first car's right-of-way. This court pointed out that numerous courts have not allowed the contributory or comparative negligence of the driver with the right-of-way to become an issue at trial without evidence that the driver with the right-of-way was driving unlawfully. *Id.* at ¶ 31. We went on to state, however that, "[t]he one caveat in all these cases is that the driver with the right of way must use ordinary care not to injure another driver who has blocked the right of way and has created a perilous condition." *Id.* at ¶ 34. Thus, even though a driver with the right-of-way has no duty to look out for other vehicles or pedestrians who are violating his right-of-way, once the driver with the right-of-way notices another vehicle or pedestrian who has failed to yield to the right-of-way and created a perilous condition, the driver with the right-of-way must use ordinary care not to injure the other person.

**{¶34}** In sum, construing the evidence in the light most favorable to appellants, as we are required to do on summary judgment, genuine issues of material fact exist in this case that preclude summary judgment. Accordingly, appellants' sole assignment of error has merit.

**{¶35}** For the reasons stated above, the trial court's judgment is hereby reversed and the matter is remanded to the trial court for further proceedings.

DeGenaro, J., concurs.

Robb, J., concurs.