[Cite as *Chapman v. Gardner*, 2020-Ohio-6717.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TRINA CHAPMAN, as Parent and Natural Guardian of Jorden Casey Chapman, a minor, | : | APPEAL NO. C-200143 <br> TRIAL NO. A-1900088 |
| | : | |
| Plaintiff-Appellant, | : | *O P I N I O N.* |
| | : | |
| vs. | : | |
| | : | |
| STARLETTA GARDNER, | : | |
| | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: December 16, 2020

*O'Connor, Acciani & Levy*, *Elizabeth L. Acciani* and *Amanda L. Patton,* for Plaintiff-Appellant,

*Law Office of William J. Moran, Jr.,* and *Krista M. Meyer,* for Defendant-Appellee.

**ZAYAS, Presiding Judge.**

{¶1}   Trina Chapman appeals the Hamilton County Common Pleas Court's judgment granting summary judgment in favor of Starletta Gardner in a case where Chapman's daughter Jorden Chapman was injured when she was struck by Gardner's vehicle.   For the following reasons, we conclude that the trial court properly granted summary judgment, and we affirm.

Factual and Procedural Background

{¶2}   Trina Chapman, on behalf of her minor daughter Jorden Chapman, filed a complaint against Starletta Gardner after her daughter was hit by a car driven by Gardner.   Her first claim asserted that "Gardner negligently, carelessly, and without due regard for the safety of others operated her vehicle in such a manner as to strike Jorden while she was attempting to cross West[wood] Northern [Boulevard] in an unmarked crosswalk, and injured her."   The second claim asserted that Trina was deprived of the services, physical comfort, companionship, care, and consortium of her daughter.

{¶3}   The following facts were established by depositions and exhibits.

{¶4}   On April 24, 2017, Jorden Chapman was walking to her home at 2653 Westwood Northern Boulevard from Westwood Elementary at around 2:15 p.m.   She walked down Westwood Northern Boulevard to Tinaview Court.   Westwood Northern Boulevard has four lanes of travel, two in each direction.   Tinaview Court is a residential side street that dead-ends at Westwood Northern Boulevard.   The parking lot for the apartment complex where the Chapmans live is across from Tinaview Court.

{¶5}   According to Trina, Jorden called her to let her know she was almost home.   Trina went outside to the sidewalk in front of the apartment complex to wait

for her daughter. Jorden was across the street on the sidewalk next to Tinaview Court. Trina testified that she and her daughter looked both ways and did not see any cars. She further testified that Jorden had crossed one lane of traffic when she was hit by Gardner. According to Trina, Jorden made contact with Gardner's front bumper on the driver's side. After she was hit, Jorden spun around 360 degrees, fell next to Tinaview Court, and passed out. Trina stated that Jorden landed where she started.

{¶6} An ambulance was called, and Jorden was unconscious when she was transported to Children's Hospital. Jorden had fractured her left ankle and was discharged that day. She wore a boot for a few months and had physical therapy from May to October in 2017.

{¶7} Jorden testified that she saw her mother across the street when she was at Tinaview Court. Her mother waved at her to cross, and Jorden looked both ways before crossing. Jorden started to walk, and immediately felt a big impact on the left side of her body. She spun around when the passenger side of the car hit her and landed on the sidewalk. Jorden did not remember anything after that except hearing people scream and an ambulance arriving.

{¶8} Starletta Gardner testified that she was driving a 2008 Hyundai Elantra up Westwood Northern Boulevard in the right-hand lane when the accident occurred. Gardner estimated that she was traveling between 25 and 30 m.p.h. The posted speed limit was 35 m.p.h. As Gardner approached Tinaview Court, she saw Jorden standing on the corner and heard a woman shouting at her not to go into the street, but Jorden darted out anyway. Gardner further explained that, "[Jorden] darted out, but I slowed up when I [saw] her getting ready to dart out into the street.

And that's when I put my brakes on. That's when she hit me." Gardner testified that her car was next to Jorden when she saw Jorden on the sidewalk. Jorden hit her side-view mirror on the passenger side, but the mirror was flexible, so there was no damage to her car.

{¶9} Gardner further testified:

Q.: How many steps into the roadway would you say that she was before your car hit her?

A.: About two.

Q.: Two steps?

A.: Yes.

Q.: Okay. And how many – and how far back did you first see her leave the curb?

A.: I was right there. It was - - it all happened at the same time.

Q.: Okay. Do you know how fast she took those two steps? Did it seem fast?

A.: Yes.

{¶10} Trina entered the police report and several maps of the scene as exhibits without objection. The police report stated that "pedestrian darted across Westwood Northern Boulevard in front of [Gardner's car], who was traveling west on Westwood Northern Boulevard." The diagram showed that the collision occurred next to the curb in the right-hand lane. The report noted that there was no damage to the vehicle and the impact area was the right front. The airbag did not deploy. The contributing circumstances were listed as darting and improper crossing, and the report noted that the motorist did not contribute to the circumstances.

{¶11} Gardner filed a motion for summary judgment on both claims, arguing that she had the right-of-way to proceed, she did not operate her vehicle in violation of any law or ordinance, and that Jorden was negligent per se for attempting to cross a street outside of a crosswalk in violation of R.C. 4511.48(A) and 4511.46(B). In response, Trina alleged that Jorden was in an unmarked crosswalk, Gardner failed to yield the right-of-way to her, and that Jorden successfully crossed almost two lanes of traffic before she was struck.

{¶12} At the hearing, both parties agreed that Jorden was not in a marked crosswalk. Trina argued that Jorden was in an unmarked crosswalk and that Gardner had a duty to yield the right-of-way to the pedestrian in the crosswalk. In the alternative, Trina contended that Gardner was negligent for failing to exercise due care to avoid the collision. The trial court granted summary judgment finding that Jorden failed to use a crosswalk at the time of the accident and that there was no evidence of negligence on the part of Gardner.

{¶13} On appeal, Trina raises two interrelated assignments of error. She first contends that the trial court erred in granting the motion for summary judgment as there existed genuine issues of material fact as to whether Jorden was in an unmarked crosswalk, whether Gardner failed to yield the right-of-way, and whether Gardner was negligent in striking Jorden. In the second assignment of error, Trina argues that the court did not consider all of the negligence arguments. For ease of discussion, we will address the assignments of error together.

## Standard of Review

{¶14} We review the granting of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment

is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Evans v. Thrasher*, 1st Dist. Hamilton No. C-120783, 2013-Ohio-4776, ¶ 25.

{¶15} The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

Law and Analysis

{¶16} To prevail on a negligence claim, the plaintiff must prove the existence of a duty, breach of that duty, and an injury resulting proximately from the breach. *See Smith v. Bond*, 7th Dist. Belmont No. 15 BE 0078, 2016-Ohio-5883, ¶ 14. Trina contends that Jorden was in an unmarked crosswalk because Tinaview Court and Westwood Northern Boulevard are both public highways that form a T intersection. According to Trina, because Jorden was in an unmarked crosswalk, she had the right-of-way, and Gardner's failure to yield constituted negligence.

{¶17} In general, "a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle

6

or pedestrian approaching from a different direction into its path." *Higgins v. Bennett*, 12th Dist. Clinton No. CA99-08-022, 2000 WL 253672 (Mar. 6, 2000), citing R.C. 4511.01(UU)(1). Under R.C. 4511.48(A), "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles * * * upon the roadway."

{¶18} The definition of "crosswalk" includes "[t]hat part of a roadway at intersections ordinarily included within the real or projected prolongation of property lines and curb lines or, in the absence of curbs, the edges of the traversable roadway[.]" An intersection is "the area embraced within the prolongation or connection of the lateral curb lines, or, if none, the lateral boundary lines of the roadways of two highways that join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways that join at any other angle might come into conflict." R.C. 4511.01(KK)(1).

{¶19} The collision occurred on Westwood Northern Boulevard while Gardner was traveling west. Jorden was standing at Tinaview Court, a side street that dead-ends at Westwood Northern Boulevard, forming a T intersection. The various maps entered as exhibits show that the curb lines and edges of Tinaview Court end at Westwood Northern Boulevard. Because the edges of the traversable roadway appear to end at Westwood Northern Boulevard, and no evidence was submitted showing that the curbs, edges, or traversable roadway of Tinaview Court extended beyond Westwood Northern Boulevard to establish a crosswalk, the trial court correctly determined that Jorden was not in an unmarked crosswalk when she was crossing the four lanes of Westwood Northern Boulevard. *See Ball v. Stark*, 10th

Dist. Franklin No. 11AP-177, 2013-Ohio-106, ¶ 33 (concluding that absent any evidence of curbs or boundaries of the alleged unmarked crosswalk, no factfinder could determine an unmarked crosswalk existed). Therefore, Jorden had a duty to yield the right-of-way to Gardner. *See* R.C. 4511.48(A).

{**¶20**} Next, Trina alleges that there was a genuine issue of material fact as to whether Gardner exercised due care because she saw Jorden before striking her. Generally, a driver has a duty to exercise "due care to avoid colliding with any pedestrian upon any roadway," and therefore, must exercise due care to avoid colliding with a pedestrian even if the pedestrian is in the driver's right-of-way in violation of R.C. 4511.48(A). R.C. 4511.48(E). A driver "must exercise due care to avoid colliding with a pedestrian in his right-of-way only upon discovering a dangerous or perilous situation." *Deming v. Osinski*, 24 Ohio St.2d 179, 180-181, 265 N.E.2d 554 (1970). Furthermore, pedestrians are "prohibited by law from leaving the curb or place of safety and entering the right of way of a motor vehicle." R.C. 4511.46(B). "A driver need not look for pedestrians or vehicles violating his right-of-way." *Id.* (rejecting the argument that drivers with the right-of-way are required to "look, look effectively and continue to look and remain alert").

{**¶21**} Because Gardner had the right-of-way, whether summary judgment was appropriate depends on whether or not she failed to exercise due care to avoid colliding with Jorden when she discovered the child "was encroaching onto her right of way." *Markley v. Knutson*, 3d Dist. Marion App. No. 9-96-29, 1996 WL 546875, *4 (Sept. 26, 1996). Gardner was traveling the posted speed limit and was not violating any traffic laws. Gardner testified that she slowed down when she saw Jorden on the sidewalk and slammed on her breaks when Jorden darted into the

street. Gardner further testified that she was next to Jorden when Jorden darted into the road and hit her side view mirror. The record established that the collision occurred so quickly that Gardner could not stop. Jorden's testimony is consistent with Gardner's testimony because she felt the impact immediately as she started to cross the street. Moreover, the police report corroborated that the accident was due to Jorden's improper crossing and darting into the street.

{¶22} Trina did not submit any evidence to establish that Gardner failed to exercise due care upon learning that Jorden was in her right-of-way. And there is nothing in the record to show that Gardner violated her duty of care because Jorden darted into the street when Gardner's car was next to her, and Gardner immediately slammed on her brakes when she discovered the dangerous situation. We conclude that Gardner lawfully had the right-of-way and did not violate her duty of care.

{¶23} Next, Trina argues that a genuine issue of material fact exists in this case as to Jorden's location in the road when the collision occurred. However, Jorden's location on the road at the time of the accident does not create a genuine issue of material fact because the evidence established that Gardner did not have time to avoid hitting her. *See Neu v. Nussbaum*, 2015-Ohio-159, 27 N.E.3d 906, ¶ 33 (12th Dist.) (concluding that because the driver did not have time to stop, the pedestrian's location on the road did not create a genuine issue of material fact).

{¶24} Finally, Trina contends that a genuine issue of material fact exists as to whether the accident was foreseeable and whether Gardner had the last clear chance to avoid the collision because she was driving in a school zone which required a heightened duty of care. The record contains no evidence that the collision occurred in a school zone, and a review of the exhibits of the maps of the location of the

collision show that Gardner was approaching a school sign, but had not passed the school sign.

{¶25} Nonetheless, as previously discussed, Gardner did not have a duty to "look, look effectively and continue to look and remain alert" for pedestrians violating her right-of-way. *Deming*, 24 Ohio St.2d 179 at 180-181, 265 N.E.2d 554. The record reflects that Gardner took proper action when she slammed on her brakes when she saw Jorden enter the road and could not avoid the collision.

{¶26} Absent any evidence of negligence on Gardner's part, we conclude that no genuine issues of material fact remain in dispute and Gardner was entitled to judgment as a matter of law. Accordingly, we overrule the first and second assignments of error.

### Conclusion

{¶27} Having overruled both assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS,** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.