[Cite as *Estate of Shackelford*, 2016-Ohio-1431.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

ESTATE OF JERRY SHACKELFORD          :

                                                    CASE NO.  CA2015-06-044

                                                   :

                                                    O P I N I O N

                                                   :                4/4/2016

                                                   :

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 13ES10077

Carl W. Zugelter, 1285 West Ohio Pike, Amelia, Ohio 45102, for appellants

Ulmer & Berne LLP, Jennifer Hageman, 600 Vine Street, Suite 2800, Cincinnati, Ohio 45202, for appellee

Ulmer & Berne LLP, Alyson Terrell, 65 East State Street, Suite 1100, Columbus, Ohio 43215, for appellee

**M. POWELL, P.J.**

{¶ 1}   Appellant, Jennifer Shackelford, appeals a decision of the Clermont County Probate Court ordering that appellee, Aetna Life Insurance Company ("Aetna"), be fully reimbursed, on a first-priority basis, from the settlement proceeds for wrongful death and survival claims for the medical expenses it paid on behalf of Jerry Shackelford.  Appellant is Shackelford's surviving spouse and the executor of his estate.

{¶ 2}   On April 18, 2013, at approximately 4:40 p.m., Shackelford was driving his

motorcycle through an intersection when Douglas Beverly ran a red light and struck Shackelford. Following emergency medical treatment at the scene, Shackelford was air-cared to a hospital where he received additional medical treatment. Shackelford died at the hospital at 5:50 p.m. without ever regaining consciousness after the traffic crash. In addition to appellant, Shackelford is also survived by an adult son.

{¶ 3} At the time of the accident, Shackelford was a participant in the PNC Financial Services Group, Inc. Welfare Benefit Plan ("the Plan"), an ERISA-qualified, self-funded plan administered by Aetna. Aetna paid $32,917.06 in medical expenses on Shackelford's behalf for the medical treatment he received between the accident and his death.

{¶ 4} The Plan includes a subrogation and reimbursement clause which provides, in relevant part:

> ### *Subrogation*
> Immediately upon paying any benefits under this Plan, the Plan shall be subrogated to (stand in the place of) all rights of recovery a Covered Person has against any Responsible Party with respect to any payment made by the Responsible Party to a Covered Person due to [the latter's] injury to the full extent of benefits provided by the Plan.
>
> ### *Reimbursement*
> In addition, if a Covered Person receives any payment from any Responsible Party or Insurance Coverage as a result of an injury, the Plan has the right to recover from, and be reimbursed by, the Covered Person for all amounts the Plan has paid as a result of that injury, up to and including the full amount the Covered Person receives from any Responsible Party.
>
> ### *Lien Rights*
> Further, the Plan will automatically have a lien to the extent of benefits paid by the Plan for treatment of injury for which the Responsible Party is liable. The lien shall be imposed upon any recovery whether by settlement, judgment, or otherwise related to treatment for any injury for which the Plan paid benefits.
>
> ### *First-Priority Claim*
> By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the Plan, the Covered Person

acknowledges that this Plan's recovery rights are a first priority claim against all Responsible Parties and are to be paid to the Plan before any other claim for the Covered Person's damages. This Plan shall be entitled to full reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the Plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained.

*Applicability to All Settlements and Judgments*
The terms of this entire subrogation and right of recovery provision shall apply and the Plan is entitled to full recovery regardless of whether the settlement or judgment received by the Covered Person identifies the medical benefits the Plan provided or purports to allocate any portion of such settlement or judgment to payment of expenses other than medical expenses. The Plan is entitled to recover from any and all settlements or judgments, even those designated as pain and suffering, non-economic damages, and/or general damages only.

*Cooperation*
The Covered Person shall do nothing to prejudice the Plan's subrogation or recovery interest or to prejudice the Plan's ability to enforce the terms of this Plan provision. This includes, but is not limited to, refraining from making any settlement or recovery that attempts to reduce or exclude the full cost of all benefits provided by the Plan.

Under the Plan's definitions, Shackelford is the Covered Person and Beverly is the Responsible Party.

{¶ 5} State Farm Insurance, Beverly's insurer, offered its policy limits of $102,000 in exchange for a settlement of all claims against Beverly. Appellant accepted the settlement. Beverly subsequently died without any assets to be applied to a wrongful death or survival claim. In addition, there was no available underinsured or uninsured motorist coverage.

{¶ 6} In October 2014, appellant filed an Application to Approve Settlement and Distribution of Wrongful Death and Survival Claims in the probate court. The application requested the probate court to allocate the $102,000 settlement proceeds as follows: $19,361.91 for the funeral and burial expenses paid by appellant; $33,333 and $295.88 for

attorney fees and expenses, respectively; $48,128.78 to the wrongful death claim; and $880.43 to the survival claim. The proposed allocation was based upon an anticipated jury verdict of $1.8 million on a wrongful death claim, and the fact that the only amount attributable to a survivor claim were the medical expenses paid by Aetna. Appellant's counsel reasoned that because the medical expenses equaled 1.8 percent of the anticipated jury verdict, the "net" settlement proceeds should be allocated as follows: 1.8 percent to the survival claim, or $880.43, and 98.2 percent to the wrongful death claim, or $48,128.78.

{¶ 7} Aetna filed objections to the application, arguing that under federal law and the Plan's subrogation and reimbursement clause, the Plan was entitled, on a first-priority basis, to the full reimbursement of the medical expenses paid on Shackelford's behalf. Accordingly, Aetna asked the probate court to allocate $32,917.06 of the entire settlement proceeds to the Plan.

{¶ 8} The probate court conducted a hearing on the application. The sole survival claim asserted at the hearing concerned Shackelford's medical expenses incurred as a result of the accident and paid by Aetna. On May 8, 2015, the probate court "allocate[d] $32,917.06 of the settlement proceeds to the survival claim for reimbursement to the Plan." The probate court found that the medical expenses paid by Aetna were attributable to the survival claim and that "[u]nder the specific terms and provisions of the Plan, and in accordance with [the] law, the Plan is entitled to full reimbursement for these expenses in the sum of $32,917.06."

{¶ 9} Appellant appeals, raising one assignment of error:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE BENEFICIARIES OF THE DECEDENT'S ESTATE IN RULING THAT THE DECEDENT'S HEALTH PLAN WAS ENTITLED TO FULL REIMBURSEMENT OF ALL MEDICAL EXPENSES THE PLAN PAID ON THE DECEDENT'S BEHALF FOR MEDICAL TREATMENT FOLLOWING THE

ACCIDENT THAT WAS THE SUBJECT OF A WRONGFUL DEATH AND SURVIVAL ACTION AND ALLOCATING THAT ENTIRE AMOUNT TO THE DECEDENT'S SURVIVAL CLAIM WITHOUT REGARD TO THE AMOUNT OF DAMAGES ATTRIBUTABLE TO THE BENEFICIARIES'S WRONGFUL DEATH CLAIM.

{¶ 11} Appellant argues the probate court erred in awarding $32,917.06 of the settlement proceeds to Aetna for reimbursement of the medical expenses it paid on behalf of Shackelford. Appellant asserts that Aetna was entitled to obtain reimbursement of the medical expenses solely from the amount of the settlement proceeds allocable to the survival claim. Accordingly, appellant asserts the probate court should have first apportioned the settlement proceeds between the wrongful death and survival claims, and then allowed Aetna to obtain reimbursement of the medical expenses from the amount of the settlement proceeds allocated to the survival claim.

{¶ 12} A probate court's distribution of wrongful death proceeds is generally reviewed for an abuse of discretion. *In re Molitor*, 12th Dist. Brown No. CA2012-06-013, 2013-Ohio-525, ¶ 16. However, the issue of whether the probate court applied the correct legal standard in distributing the wrongful death proceeds raises a question of law (i.e., construction of the Plan's subrogation and reimbursement clause), which we review de novo. *Id.*

{¶ 13} Even though usually litigated in a single proceeding and brought by the same nominal party, wrongful death and survival claims are independent, distinct claims that belong to separate individuals. *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, ¶ 17; *In re Estate of Craig*, 89 Ohio App.3d 80, 84, (12th Dist.1993). A wrongful death claim belongs exclusively to the decedent's beneficiaries and is meant to cover pecuniary and emotional loss suffered by those beneficiaries as a result of the death. *Peters* at ¶ 10; *Craig* at 84. By contrast, a survival claim is simply the action the decedent

could have brought for the injuries he suffered prior to his death and is generally for the benefit of the estate. *Peters* at *id*; *Craig* at *id*. Settlement funds recovered in a wrongful death action are for the exclusive benefit of the statutory beneficiaries and are not an asset of the decedent's estate. *Craig* at 84-85.

{¶ 14} R.C. 2125.03(A) directs a probate court to distribute wrongful death settlement proceeds "in such manner as is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries." In applying R.C. 2125.03(A)(1), the probate court should distribute wrongful death settlement proceeds in an equitable manner "without regard to the statute of dissent and distribution, and without regard to any precise mathematical formulae." *In re Molitor* at ¶ 17. Sup.R. 70 governs the process by which a settlement of wrongful death and survival claims must be handled in the probate court. The probate court's approval of a settlement agreement is necessary because the probate court is charged with determining whether a settlement is "fair and equitable." *In re Kenington*, 12th Dist. Clermont No. CA2002-01-005, 2003-Ohio-2549, ¶ 8.

{¶ 15} We find that the probate court erred in allocating, on a first-priority basis, $32,917.06 of the entire settlement proceeds to the survival claim, and that in doing so, the court applied the wrong legal standard.

{¶ 16} We note at the outset that although the probate court was required under R.C. 2125.03 to distribute the wrongful death proceeds of the settlement agreement to the statutory beneficiaries of Shackelford, it did not do so and in fact, gave no consideration to the value of the wrongful death claim. *See In re Dezso*, 8th Dist. Cuyahoga Nos. 73207 and 74357, 1998 WL 774966 (Nov. 5, 1998) (where settlement funds recovered in a wrongful death and survival action consisted of money received in wrongful death action, settlement and distribution of these funds must be approved by probate court).

{¶ 17} In support of its decision, the probate court relied on the United States Supreme Court's decision in *U.S. Airways, Inc. v. McCutchen*, __ U.S. __, 133 S.Ct. 1537 (2013), and its holding that unjust enrichment and other equitable principles cannot be applied to defeat a plan's ability to enforce its right of recovery, even where recovery is insufficient to both adequately compensate the plan participant and satisfy the plan's lien.

{¶ 18} Aetna similarly cites *McCutchen*, as well as *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir.2009), for the proposition that the subrogation provisions of an ERISA-qualified, self-funded plan, such as the Plan here, must be enforced to the full extent of the medical benefits paid by such a plan. Significantly, neither *McCutchen* nor *Longaberger* involved the death of the plan participant. *McCutchen* and *Longaberger* are therefore factually distinguishable and their holdings are inapplicable to the issue of how an unallocated gross settlement, inadequate in amount to fully compensate for the value of wrongful death and survival claims, may be divided between those respective claims.

{¶ 19} In support of its decision, the probate court also and primarily relied on the Plan's subrogation and reimbursement clause. However, a close reading of the clause shows that its provisions only relate to (1) payment, settlement, or judgment received by a covered person for injury to the covered person, (2) the covered person's damages, and (3) the covered person's conduct in abstaining from prejudicing the Plan's subrogation or recovery interest. The clause does not relate to any payment, settlement, or judgment received by statutory wrongful death beneficiaries for injury they sustained as a result of the wrongful death of the covered person; nor does it relate to damages of the statutory wrongful death beneficiaries. Other provisions of the clause such as the Plan's lien rights must necessarily be read in conjunction with the overall clause which is restricted to medical expenses paid for the treatment of the covered person and settlements or judgments received by the covered person.

{¶ 20} Appellant accepted State Farm Insurance's settlement agreement in exchange for a settlement of all claims against Beverly. Although the settlement agreement is not in the record, it is apparent the settlement included an amount to compensate for Shackelford's wrongful death as the gross settlement of $102,000 exceeds the amount of the sole survival claim (i.e., the medical benefits paid by Aetna under the Plan).

{¶ 21} As stated above, a wrongful death claim belongs exclusively to the decedent's beneficiaries, and settlement funds recovered in a wrongful death action are for the exclusive benefit of the statutory beneficiaries and are not an asset of the decedent's estate. *Peters*, 2007-Ohio-4787 at ¶ 10; *Craig*, 89 Ohio App.3d at 84-85. By contrast, a survival claim is simply the action the decedent could have brought for the injuries he suffered prior to his death and is generally for the benefit of the estate. *Peters* at *id.*; *Craig* at *id.*

{¶ 22} Notwithstanding the apparent breadth of the Plan's subrogation and reimbursement clause, we find that the reach of those provisions is limited to compensation received by Shackelford for injuries he sustained. That is, under the Plan's clause, Shackelford subrogated to Aetna only his right to recover from third parties compensation for his medical expenses. The right to recover for wrongful death is not a right that ever belonged to Shackelford or to his estate. Rather, it solely belongs to Shackelford's statutory beneficiaries.

{¶ 23} A review of the probate court's judgment entry plainly shows that the court's allocation of the settlement proceeds was based solely upon the court's determination that the Plan's subrogation and reimbursement clause applied to the entire settlement proceeds without any consideration as to the relative values of the wrongful death and survival claims. Rather than first determining how the gross settlement should be allocated between the wrongful death and survival claims and then apply the Plan's subrogation and reimbursement clause to the portion of the settlement allocated to the survival claim, the probate court simply

applied the Plan's clause to the entire unallocated settlement. However, the Plan's clause does not circumscribe the probate court's discretion as to how to allocate settlement proceeds; rather, the clause only relates to the Plan's right of subrogation to settlement proceeds that are ultimately allocated to a survival claim.

{¶ 24} We find that the probate court did not apply the correct legal standard when it applied the Plan's subrogation and reimbursement clause to the entire, unallocated settlement proceeds on a first-priority basis and without any consideration to the relative values of the wrongful death and survival claims, ordered that Aetna be reimbursed in full for the medical expenses it paid on behalf of Shackelford, and then ostensibly allocated the balance to the wrongful death claim. Rather, the probate court should have first allocated the settlement proceeds between the wrongful death and survival claims, and then applied the Plan's clause to the amount of the proceeds allocated to the survival claim.

{¶ 25} We reiterate that R.C. 2125.03(A) directs the probate court to distribute wrongful death damages in an equitable manner. As we have noted, in cases where the gross settlement is inadequate to fully compensate for all wrongful death and survival claims, the relative value of the respective wrongful death and survival claims is an important factor. However, we are not suggesting that an equitable distribution requires strict adherence to a relative value formulation, such as the one proposed by appellant. Rather, the relative value of the respective claims is one factor, albeit an important one, in arriving at a distribution that is equitable. The error we find here is the probate court's apparent failure to give any consideration to the relative values of the wrongful death and survival claims, instead merely applying the Plan's subrogation and reimbursement clause to the entire unallocated settlement.

{¶ 26} We note that Aetna also argues that the Plan's cooperation provision, pursuant to which a covered person may not prejudice the Plan's subrogation and reimbursement

interests, is violated by appellant's proposed allocation and distribution of the settlement proceeds. We reject this argument. Submitting the matter to the probate court as required under Ohio law does not in any way prejudice the Plan's subrogation rights. Allocation of the settlement proceeds will be determined by the probate court based upon what is equitable and without regard to appellant's proposed allocation and distribution.

{¶ 27} We therefore reverse the probate court's decision and remand the matter with instructions that the probate court first allocate the settlement proceeds between the wrongful death and survival claims, and then and only then, apply the Plan's subrogation and reimbursement clause to the amount of the proceeds allocated to the survival claim. We decline to address whether appellant's proposed allocation as set forth in the Application to Approve Settlement and Distribution of Wrongful Death and Survival Claims is equitable. Such determination must be first made by the probate court.

{¶ 28} Appellant's assignment of error is well-taken and sustained.

{¶ 29} Judgment reversed and remanded.

HENDRICKSON and PIPER, JJ., concur.