[Cite as *Christie v. McNeely*, 2024-Ohio-4523.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| BRENDA CHRISTIE, ADMINISTRATOR OF THE ESTATE OF MICHAEL GODSEY, | : | |
| | : | CASE NO. CA2024-03-002 |
| Appellant, | : | O P I N I O N<br>9/16/2024 |
| | : | |
| - vs - | : | |
| | : | |
| KENNETH MCNEELY, JR., et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CV 2023 0004

Mezibov Butler, and Brian J. Butler and Dennis A. Gleason, for appellant.

Dickie, McCamy & Chilcote, P.C., and Joseph J. Golian, for appellee, Kenneth McNeely.

Dinsmore & Shohl LLP, and Alan H. Abes and  R. Samuel Gilley, for appellees, National Interstate Insurance Company.


        **M. POWELL, J.**

        {¶ 1}  Appellant, Brenda Christie, Administrator of the Estate of Michael Godsey,

appeals the decision of the Brown County Court of Common Pleas granting summary

judgment to appellee, Kenneth McNeely, Jr., in this case involving an action for wrongful

death. For the reasons outlined below, we affirm the trial court's summary judgment decision.

## Facts and Procedural History

**{¶ 2}** On January 26, 2019, at approximately 6:50 p.m., McNeely left his home located in Sterling Township, Brown County, Ohio to make the approximately two-mile drive to Crosstown Carry-Out, a nearby convenience store, to purchase something to eat. While making his way to the store, McNeely, traveling westbound on Crosstown Road in a 2011 Toyota Prius owned by his employer, Universal Transportation Services, struck and killed Godsey, a pedestrian walking down Crosstown Road in that same westbound direction. There is no dispute that, given the data taken from the Prius' onboard computer, McNeely was traveling at a speed between 54.9 to 59.5 mph at the time he struck and killed Godsey. There is also no dispute that the stretch of Crosstown Road where McNeely struck and killed Godsey has no sidewalks and a posted speed limit of 55 mph.

**{¶ 3}** On February 3, 2021, Christie, Godsey's sister and the administrator of Godsey's estate, filed suit against McNeely.[1] This suit included a cause of action against McNeely for wrongful death. Christie later dismissed her suit against McNeely on April 13, 2022. Pursuant to Ohio's savings statute, R.C. 2305.19(A), Christie then refiled her suit against McNeely on January 3, 2023. This refiled suit included the same wrongful death cause of action against McNeely as the original lawsuit Christie had filed against McNeely on February 3, 2021.

**{¶ 4}** On June 6, 2023, the trial court held a scheduling conference and thereafter issued a scheduling order to the parties. This scheduling order noted "Already Done" in

---

1. Christie also filed suit against McNeely's employer, Universal Transportation Services. However, although brought within the same complaint, that suit is not relevant to this appeal, as it was voluntarily dismissed by Christie on May 3, 2023.

reference to Christie's deadline to disclose her expert witness(es). The trial court's scheduling order also set June 17, 2023 as the deadline for the parties to file their respective motions for summary judgment, if any. Pursuant to the trial court's scheduling order, McNeely filed his motion for summary judgment on June 14, 2023.

**{¶ 5}** McNeely supported his summary judgment motion with a report from his previously disclosed expert witness, Nicholas P. Eiselstein, a licensed professional engineer, who opined the following within his expert report's executive summary:

● The damage profile of the McNeely Toyota is consistent with the frontal impact with pedestrian Godsey.

● The initial point of impact between the McNeely Toyota and pedestrian Godsey was at or near the easternmost blood stain in the center of the westbound lane of Crosstown Road.

● The McNeely Toyota was traveling in the range of 54.9 to 59.5 mph at impact with pedestrian Godsey.

● The McNeely Toyota was approximately 121 to 141 feet from the point of impact when Mr. McNeely first perceived pedestrian Godsey.

● The 121 to 141 feet distance range at which Mr. McNeely detected pedestrian Godsey is consistent with Mr. McNeely being alert and reacting reasonably to the unexpected hazard posed by pedestrian Godsey considering the dark and unlit roadway conditions, lack of reflective material on pedestrian Godsey, and the Toyota's headlight capabilities.

● Mr. McNeely did not have the time and distance needed to perceive pedestrian Godsey, react by braking, and stop the Toyota before impact and avoid the collision.

● If pedestrian Godsey entered abruptly into the westbound lane of Crosstown Road, as opposed to walking in the westbound lane, the time and distance available to Mr. McNeely to perceive and react to the situation would have been further reduced.

**{¶ 6}** On August 11, 2023, Christie filed a Civ.R. 56(F) motion with the trial court seeking a continuance of discovery "to obtain her own expert." Civ.R. 56(F) "affords a

party a mechanism to seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it." *Crane Serv. & Inspections, LLC v. Cincinnati Specialty Underwriters Ins. Co.*, 2018-Ohio-3622, ¶ 27 (12th Dist.). That same day, Christie also filed a memorandum in opposition to McNeely's motion for summary judgment "contingent on the denial" of her Civ.R. 56(F) motion.

**{¶ 7}** On September 6, 2023, the trial court issued an entry granting Christie's motion brought pursuant to Civ.R. 6(B)(2), thereby granting Christie a continuance until October 1, 2023. The following week, on September 13, 2023, the trial court issued a notice indicating the matter would be submitted for determination of McNeely's motion for summary judgment on November 14, 2023. The record indicates that both the trial court's September 6, 2023 entry and September 13, 2023 notice were served upon Christie's trial counsel via ordinary mail. Christie, however, never filed anything additional with the trial court. This necessarily includes, among other things, Christie not filing any opposing expert report to that of McNeely's expert, Eiselstein.

**{¶ 8}** On November 21, 2023, a trial court magistrate issued a decision granting McNeely's motion for summary judgment. In so holding, the magistrate stated, in pertinent part, the following:

> The Court notes that the Plaintiff [Christie] requested additional time to respond to the summary judgment motion and that request was granted. However, no additional affidavits or memoranda were filed after the expiration of the extended time. The affidavits filed on behalf of Defendant McNeely clearly and unequivocally establish that Plaintiff's decedent walked directly into the path of Defendant McNeely's vehicle.

**{¶ 9}** The magistrate also stated in regard to McNeely's expert witness, Eiselstein, the following:

- 4 -

> Defendant McNeely also filed an affidavit of Nicholas P. Eiselstein, P.E., who did a thorough investigation and report on the accident. He establishes that the Defendant did not have the opportunity to stop or avoid the accident. He stated how much time and distance would be necessary for the Defendant to stop and avoid striking the Plaintiff's decedent. The Plaintiff did not file any contrary affidavits and contends that the speed of Defendant McNeely is for a trier of fact to decide. They ignore the findings of Eiselstein's affidavit that establish that at any speed from 45 mph as stated by McNeely to the calculated speed of 54.9 to 59.5, it would not be possible to avoid Plaintiff's decedent [Godsey].

**{¶ 10}** On December 5, 2023, Christie filed objections to the magistrate's decision. That same day, Christie also filed a Civ.R. 6(B)(2) motion for an extension of time. Within her Civ.R. 6(B)(2) motion, Christie requested permission from the trial court to submit "additional information" in response to McNeely's motion for summary judgment. Civ.R. 6(B)(2) "permits a court to extend the time prescribed by the civil rules for performing an act upon a showing of excusable neglect." *Napier v. Cieslak*, 2015-Ohio-2574, ¶ 6 (12th Dist.).

**{¶ 11}** On December 15, 2023, McNeely filed a memorandum in opposition to Christie's objections to the magistrate's decision and Civ.R. 6(B)(2) motion for an extension of time. One week later, on December 22, 2023, Christie filed a reply in support of her Civ.R. 6(B)(2) motion. Christie included within her reply memorandum a preliminary expert report prepared by Jay Nogan, a purported "mechanical expert," dated December 13, 2023. Nogan's report was not authenticated or otherwise accompanied by Nogan's curriculum vitae, or CV.[2]

**{¶ 12}** On February 21, 2024, the trial court issued a decision overruling Christie's objections to the magistrate's decision. Within this decision, the trial court also denied

---

2. A CV is similar to a resume. It is an itemized list detailing the person's education, publications, accomplishments, notable projects, awards, achievements, and/or professional experiences. A CV is generally proffered to assist the trial court in determining whether a witness may be qualified as an expert pursuant to Evid.R. 702.

Christie's Civ.R. 6(B)(2) motion for an extension of time. In so holding, the trial court initially stated, albeit mistakenly, that:

> The Plaintiff [Christie] claims some type of excusable neglect on the part of Plaintiff's counsel. The accident took place on February 16, 2019. The case was filed, dismissed, and refiled. To this date, counsel for Plaintiff has failed to identify an expert and has not even indicated to the Court that such expert exists. The Court had to consider what was before the Court and not speculate on what some unknown person might testify about. The Magistrate correctly cited Mootispaw v. Eckstein, 76 Ohio St.3d 383 (1986), which holds that the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civil Rule 56, must set forth specific facts showing the existence of a genuine triable issue.

{¶ 13} Continuing, the trial court then stated:

> We are five years past the date of the accident and yet no such affiant exists. No such deposition exists. It is clear that waiting eight more days or eight more months or eight more years would accomplish nothing because the Plaintiff's decedent walked directly into the path of Defendant McNeely's automobile. There is absolutely nothing in the record to even suggest a different outcome other than Plaintiff's counsel suggesting that a jury might disagree with the conclusion of Mr. Eiselstein.

{¶ 14} The trial court thereafter concluded by noting that "the standard of review on appeal [of a Civ.R. 6(B)(2) motion] is that of an abuse of discretion. The Court finds that the Magistrate exercised good discretion in making the decision."

{¶ 15} On March 18, 2024, Christie filed a notice of appeal from the trial court's decision. Following briefing, oral argument was held before this court on August 5, 2024. Christie's appeal now properly before this court for decision, Christie has raised two assignments of error for review.

**Assignment of Error No. 1:**

{¶ 16} THE TRIAL COURT ERRED IN FINDING THAT NO GENUINE ISSUE OF MATERIAL FACT EXIST WITH RESPECT TO WHETHER KENNETH MCNEELY, JR.

NEGLIGENTLY CAUSE THE DEATH OF MICHAEL GODSEY.

**{¶ 17}** In her first assignment of error, Christie argues the trial court erred by granting summary judgment to McNeely on her action for wrongful death. To support this claim, Christie argues it was error for the trial court to find no genuine issue of material fact exists as to whether McNeely "negligently cause[d]" the decedent Godsey's death. We find no merit to Chrisie's argument.

*Summary Judgment Standard of Review*

**{¶ 18}** "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, LLC. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.). "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, LLC. v. McKay*, 2021-Ohio-2156, ¶ 26 (12th Dist.). De novo means that this court uses the same standard that the trial court should have used. *Brock v. Servpro*, 2022-Ohio-158, ¶ 29 (12th Dist.). Therefore, when conducting a de novo review, this court independently reviews the trial court's decision without giving the trial court's decision any deference. *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875, ¶ 9 (12th Dist.). "When an error is found in a trial court's decision granting a summary judgment motion, the trial court's decision is generally reversed and the matter is remanded to the trial court for further proceedings." *Guzzetta v. Guzzetta*, 2024-Ohio-294, ¶ 17 (12th Dist.), citing *Ginn v. Stonecreek Dental Care*, 2017-Ohio-4370, ¶ 41 (12th Dist.) ("the judgment of the trial court granting summary judgment in favor of [defendant-appellee] is reversed, and the matter is remanded for further proceedings").

*Summary Judgment Pursuant to Civ.R. 56*

**{¶ 19}** "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant

summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frish's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.). "'An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party.'" *Bunker Hill* at ¶ 10, quoting *Abbuhl v. Orange Village*, 2003-Ohio-4662, ¶ 14 (8th Dist.); *W. Environmental Corp. of Ohio v. Hardy Diagnostics*, 2024-Ohio-3051, ¶ 24 (12th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, LP v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 20} "The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, LLC.*, 2023-Ohio-116, ¶ 18 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107. "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve." *Sullivan v. Mercy Health*, 2022-Ohio-4445, ¶ 21 (12th Dist.). To do this, the nonmoving party may not simply rest upon "the mere allegations or denials in its pleadings." *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.). The nonmoving party must instead "supply evidentiary materials setting forth specific facts showing there is a genuine issue of material fact for trial." *Anderson v. Jancoa*, 2019-Ohio-3617, ¶ 23 (12th Dist.). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.).

*Elements of an Action for Wrongful Death*

{¶ 21} "A wrongful death action is a special statutory action which did not exist at

common law." *Rossi v. Atrium Med. Ctr.*, 2023-Ohio-984, ¶ 22. No, rather than common law, an action for wrongful death is instead governed by R.C. Chapter 2125. Pursuant to R.C. 2125.01:

> When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances which make it aggravated murder, murder, or manslaughter.

"A wrongful death claim belongs exclusively to the decedent's beneficiaries and is meant to cover pecuniary and emotional loss suffered by those beneficiaries as a result of the death." *Estate of Shackelford*, 2016-Ohio-1431, ¶ 13 (12th Dist.).

{¶ 22} To maintain a wrongful death action on a theory of negligence, such as what Christie has attempted to do in this case, the plaintiff must establish three elements. *French v. New Paris*, 2011-Ohio-1309, ¶ 19 (12th Dist.). Those three elements being: "(1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Estate of Smith v. W. Brown Local School Dist.*, 2015-Ohio-154, ¶ 48 (12th Dist.), citing *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92 (1988). "'[T]he proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred.'" *Wilson v. AC&S, Inc.*, 2006-Ohio-6704, ¶ 107 (12th Dist.), quoting *Aiken v. Industrial* 143 Ohio St. 113, 117 (1944). "The plaintiff's failure to prove any of these elements would be fatal to his [or her] negligence claim." *Butler v. Wyndtree Housing Ltd. Partnership*, 2012-Ohio-49, ¶ 15 (12th Dist.).

*Christie's Argument and Analysis*

**{¶ 23}** As noted above, Christie argues it was error for the trial court to find no genuine issue of material fact exists as to whether McNeely "negligently cause[d]" the decedent Godsey's death. This is because, according to Christie, the evidence in the record does not "compel," as a matter of law, the trial court finding either that (1) Godsey walked directly into the path of McNeely's vehicle, or that (2) McNeely did not have the opportunity to stop and avoid the accident from occurring. Christie supports this claim by arguing that McNeely's deposition testimony—"the only first-hand testimony of the collision in the record"—is "wildly inconsistent" and "contradicted by documentary evidence of the crash," including that of his own expert witness' report, evidence that Christie characterizes as "narrowly circumscribed" and based "on only the most favorable combination" of McNeely's "multiple contradicting claims."

**{¶ 24}** Notwithstanding the inconsistencies in McNeely's testimony, the record is still woefully insufficient to establish a genuine issue of material fact as to whether McNeely "negligently caused" Godsey's death. Therefore, given the lack of evidence in the record to establish a genuine issue of material fact as to whether McNeely "negligently caused" Godsey's death, it was proper for the trial court to grant summary judgment to McNeely on Christie's action for wrongful death.

**{¶ 25}** "Generally, a motor vehicle has the right to proceed uninterruptedly in a lawful manner in the direction in which it is traveling in preference to any vehicle or pedestrian approaching from a different direction into its path." *Higgins v. Bennett*, 2000 Ohio App. LEXIS 827, *6 (12th Dist. Mar. 6, 2000). "Pedestrians crossing a roadway at any point other than a marked crosswalk must yield to this preferential right-of-way of vehicles." *Id.* A driver, therefore, need not look for pedestrians violating the driver's right-of-way. *Snider v. Nieberding,* 2003-Ohio-5715, ¶ 9 (12th Dist.), citing *Deming v. Osinski*,

24 Ohio St.2d 179, 180-81 (1970) (rejecting the notion that drivers in the right-of-way must "look, look effectively and continue to look and remain alert"). However, while a driver need not keep an "effective look out" for pedestrians violating his or her right-of-way, the driver must nevertheless exercise due care to avoid colliding with pedestrians within the driver's right-of-way. *Neu v. Estate of Nussbaum*, 2015-Ohio-159, ¶ 17 (12th Dist.). This duty arises upon the driver discovering the pedestrian within the driver's right-of-way. *Id.*

{¶ 26} To that end, as noted by the Sixth District Court of Appeals:

> [A] driver with the right-of-way must use ordinary care not to injure another who has blocked the right-of-way and has created a perilous condition. This duty only arises, however, after the other driver or pedestrian has failed to yield and after the driver with the right-of-way has realized that there is a clearly dangerous condition in the right-of-way. Therefore, the driver with the right-of-way is not required to anticipate that this situation might occur, and may proceed along the right-of-way under the assumption that the right-of-way will be respected.

(Citations omitted.) *Wallace v. Hipp*, 2012-Ohio-623, ¶ 17 (6th Dist.).

{¶ 27} This is in addition to the Sixth District Court of Appeals stating:

> [O]nce a driver discovers a dangerous situation caused by a pedestrian in his right-of-way, the driver must exercise due care to avoid injuring the pedestrian. Ordinary care is that degree of care which persons of ordinary care and prudence are accustomed to observe under the same or similar circumstances, and the degree of care required of a motorist is always controlled by and depends upon the place, circumstances, conditions, and surroundings. The degree of care constituting ordinary care may also depend upon the type of pedestrian the driver can expect to be in the vicinity.

(Citations and internal quotation marks omitted.) *Joyce v. Rough*, 2011-Ohio-3713, ¶ 16 (6th Dist.). Therefore, given these principles, it is now well established that "[t]he fact that a vehicle hits an individual on a roadway does not establish negligence." *Estate of Coumbassa v. Hickle*, 2023-Ohio-4292, ¶ 31 (10th Dist.). This is because negligence is never presumed. *Cordell v. White*, 2018-Ohio-1909, ¶ 32. Negligence must instead be

proven. *Paulino v. McCary*, 2005-Ohio-5920, ¶ 11 (10th Dist.).

**{¶ 28}** In this case, the uncontradicted evidence establishes that McNeely was approximately 121 to 141 feet from Godsey when McNeely could have first perceived Godsey within his right-of-way. The uncontradicted evidence also indicates that this 121-to-141-foot range is consistent with McNeely being alert and reacting reasonably to discovering Godsey within his right-of-way when considering the dark and unlit conditions of Crosstown Road at the time of the accident, the lack of reflective material on Godsey's person, and the headlight capabilities of the vehicle McNeely was driving. The uncontradicted evidence further indicates that McNeely did not have the time and distance needed from the moment he would have first been able to perceive Godsey within his right-of-way to react by braking and stopping his vehicle prior to impacting Godsey and avoiding the collision. The uncontradicted evidence additionally indicates that the time and distance available to McNeely to first perceive Godsey and react by braking his vehicle would have been further reduced if, as the record indicates, Godsey abruptly entered McNeely's right-of-way just prior to the accident.

**{¶ 29}** Therefore, because there is no evidence to indicate McNeely did anything other than exercise ordinary care to avoid colliding with Godsey upon McNeely first being able to perceive Godsey within his right-of-way, the trial court did not err by granting summary judgment to McNeely on Christie's action for wrongful death. This is because, under the facts of this case, there is simply nothing to submit to a jury. *See, e.g., Neu*, 2015-Ohio-159 at ¶ 20-33; *Zieger v. Burchwell*, 2010-Ohio-2174, ¶ 19-22 (12th Dist.); *Snider*, 2003-Ohio-5715 at ¶ 10-16; and *Higgins*, 2000 Ohio App. LEXIS 827 at \*7-\*13. Thus, given that there is simply nothing to submit to a jury, the trial court did not err by determining that "[t]here [was] absolutely nothing in the record to even suggest a different outcome other than Plaintiff's counsel suggesting that a jury might disagree with the

conclusion of Mr. Eiselstein." Accordingly, finding no error in the trial court's decision to grant summary judgment to McNeely on Christie's action for wrongful death, Christie's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 30} THE TRIAL COURT ERRED BY DENYING APPELLANT'S 6(B)(2) MOTION AND DECLINING TO CONSIDER APPELLANT'S EXPERT REPORT.

{¶ 31} In her second assignment of error, Christie argues the trial court erred by denying her Civ.R. 6(B)(2) motion for an extension of time, which ultimately resulted in the trial court declining to consider a report from her expert, Nogan, when ruling on McNeely's motion for summary judgment. We again find no merit to Christie's argument.

*Civ.R. 6(B)(2) Extension of Time Standard of Review*

{¶ 32} "It is well-settled that a trial court has the inherent power to control its own docket and the progress of the proceedings in its court." *Paramount Parks, Inc. v. Admiral Ins. Co.*, 2008-Ohio-1351, ¶ 37 (12th Dist.). Given this inherent power, "[a] trial court's Civ.R. 6(B)(2) determination is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion." *Esken v. Zurich American Ins. Co.*, 2004-Ohio-3668, ¶ 8, citing *Miller v. Lint*, 62 Ohio St.2d 209, 213-214 (1980). An abuse of discretion implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Complete Lawn Servs. v. Chimney Hill, L.L.C.*, 2016-Ohio-997, ¶ 21 (12th Dist.). "Under this standard, an appellate court may not substitute its judgment for that of the trial court." *Figetakis v. My Pillow*, 2022-Ohio-1078, ¶ 16 (9th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Extension of Time Pursuant to Civ.R. 6(B)(2)*

{¶ 33} Civ.R. 6(B)(2) "permits a court to extend the time prescribed by the civil rules for performing an act upon a showing of excusable neglect." *Napier v. Cieslak,*

2015-Ohio-2574, ¶ 6 (12th Dist.). The rule states that "when the civil rules require or allow an act to be done within a specified time, the trial court, for cause shown, may at its discretion and upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect." *Esken*, 2004-Ohio-3668, ¶ 7. Specifically, Civ.R. 6(B)(2) provides:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . , or . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . ."

The rule therefore contemplates the party requesting an extension to do "an act" before the trial court rules on the matter that the aforementioned act concerns. *Learning Tree Academy, Ltd. v. Holeyfield*, 2014-Ohio-2006, ¶ 15 (12th Dist.).

{¶ 34} "The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances." *Esken* at ¶ 9. Neglect is considered inexcusable if the neglect "falls substantially below what is reasonable under the circumstances." *Zugg v. Wisby*, 2011-Ohio-2468, ¶ 10 (12th Dist.), citing *State ex rel. Weiss v. Indus. Comm.*, 65 Ohio St.3d 470, 473, 1992-Ohio-71. Neglect is also considered inexcusable if the neglect "can be regarded as a 'complete disregard for the judicial system.'" *Id.*, quoting *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 20, 1996-Ohio-430. It necessarily follows, therefore, that "excusable neglect" in the Civ.R. 6(B)(2) context "does not exist if the party could have controlled or guarded against the event which caused the neglect." *Id.*, citing *Vanest v. Pillsbury Co.*, 124 Ohio App.3d 525, 536 (4th Dist.1995). This test "'is less stringent than that applied under Civ.R. 60(B),'" the rule governing motions requesting relief from a judgment. *Deere & Co. v. Brown*, 2022-Ohio-1898, ¶ 27 (12th Dist.), quoting *State ex rel. Lindenschmidt v. Butler*

*Cty. Bd. of Commrs.*, 72 Ohio St.3d 464, 466, 1995-Ohio-49.

*Christie's Argument and Analysis*

{¶ 35} Christie argues the trial court's decision denying her Civ.R. 6(B)(2) motion, which ultimately resulted in the trial court not considering a report from her expert, Nogan, when ruling on McNeely's motion for summary judgment, was error that requires this matter be reversed and remanded to the trial court. This is because, according to Christie, "although the failure to timely obtain and submit the report was due to error, the error was an honest one," thus constituting excusable neglect. However, despite the unique facts and circumstances this case presents, and while there may be some indication that Christie's failure to timely file her expert's report with the trial court was an "oversight" on the part of her trial counsel, the trial court's decision denying her Civ.R. 6(B)(2) motion was nevertheless not unreasonable, arbitrary, or unconscionable so as to constitute an abuse of discretion. This is particularly true in this case when considering Christie had yet to identify her alleged expert witness, Nogan, prior to the filing of her reply in support of her Civ.R. 6(B)(2) motion. This occurred on December 22, 2023, nearly five years after the accident occurred on February 16, 2019, almost three years after Christie filed her original complaint on February 3, 2021, and roughly two years after Christie refiled her complaint on January 3, 2022. To the extent McNeely claims otherwise, and to the degree in which Christie claims her trial counsel's failure to timely obtain and submit Nogan's expert report was an "honest error" that constitutes excusable neglect, the trial court did not abuse its discretion in finding that these claims were meritless.

{¶ 36} The fact that the trial court was under the mistaken belief that Christie had "failed to identify an expert" and had "not even indicated" that such an expert exists when issuing its decision does not change this fact. Although Christie was in receipt of Eiselstein's report by April 2022, she was content to proceed without designating her own

- 15 -

expert as shown by the June 6, 2023 scheduling order indicating the parties had already completed expert witness disclosure. Christie failed to submit her expert's report in accordance with either the September 6, 2023 order granting the Civ.R. 56(F) motion and extending time until October 1, 2023, or the September 13, 2023 Notice of Assignment requiring submission of summary judgment affidavits and documents by November 14, 2023. Christie finally submitted Nogan's expert report on December 22, 2023, nearly five years after the accident occurred, almost three years after Christie filed her original complaint on February 3, 2021, and roughly two years after Christie refiled her complaint on January 3, 2022. Even then, Nogan's report could not have been considered by the trial court as it was unauthenticated. Under these circumstances, the trial court's mistaken belief that Christie had yet to identify her expert witness at the time it ruled on the motion for summary judgment does not render the denial of Christie's Civ.R. 6(B)(2) motion an abuse of discretion.

{¶ 37} Finding no error in the trial court's decision, Christie's second assignment of error challenging the trial court's decision to deny her Civ.R. 6(B)(2) motion also lacks merit and is overruled.

**Conclusion**

{¶ 38} For the reasons stated above, and finding no merit to either of Christie's two assignments of error raised herein, Christie's appeal of the trial court's decision granting summary judgment to McNeely on her action for wrongful death is denied.

{¶ 39} Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.